829 F.2d 845
 Jesus F. AGUON; Vincent Aguon; Concepcion A. Cruz; Rosa
A. Mantanona; Ana A. Meno; and Isabel A. Borja,
Petitioners/Appellants,
v.
Pilar Lujan CALVO, as administrator of the Estate of Ramon
Perez Calvo, Deceased, Respondent/Appellee.
 No. 86-2478.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 8, 1987.
Decided Oct. 5, 1987.
 
 David A. Mair, Agana, Guam, for petitioners/appellants.
 John C. Dierking, Agana, Guam, for respondent/appellee.
 Appeal from the United States District Court for the District of Guam.
 Before POOLE, NORRIS and BRUNETTI, Circuit Judges.
 BRUNETTI, Circuit Judge:
 
 Overview
 
 1
 The appellants ("Aguons") and appellees ("Calvos") each filed a petition to register title to a plot of land identified as "Lomsed." Each opposed the other's petition. The Superior Court of Guam initially ordered registration of title in the Calvos on the theory that the Calvos were bona fide purchasers. The Aguons appealed to the Appellate Division of the District Court of Guam challenging this determination, and the case was remanded to the Superior Court for factual findings on the Calvos' bona fide purchaser status.
 
 
 2
 The Superior Court then issued a Supplemental Decision, ruling that title should be registered in the Calvos because the Aguons were estopped to assert their own title in Lomsed. The Aguons here appeal the opinion of the Appellate Division of the Guam District Court, which affirmed the Superior Court's ruling on the estoppel issue.
 
 Facts
 
 3
 In this appeal, the Calvos concede that a remote grantor in their chain of title, Rosa Aguon, never owned legal title. Examination of the events establishing the chain of title is necessary, however, to understand the application of the lower court's estoppel theory and Guam's Marketable Title Act to this case.
 
 
 4
 In 1876 Ramon Aguon died, leaving a plot of land known as Estate 12 to his son, Vicente Aguon Quintanilla (VAQ). VAQ's interest was recorded in 1895. VAQ was murdered by his wife, Rosa Aguon (Rosa), in 1900. VAQ was survived by Rosa and his two children, Juan Torres Aguon (Juan) and Aurora Aguon Pinaula (Aurora). There is no dispute that Rosa, as the convicted murderer of her husband, was disqualified from inheriting from her husband. There is also no recorded document vesting title in the surviving children, Juan and Aurora.
 
 
 5
 In 1904, Rosa executed two deeds of cession (assignment) to Juan and Aurora, irrevocably conveying all her rights to the Estate 12 land, including community property or widow's share rights. Both grantees were minors at the time, but were notified of the conveyance and affirmed the deeds' contents. These deeds were never recorded in the land records office.
 
 
 6
 Rosa initiated a probate proceeding for the estate of VAQ in 1915. By that time, Aurora had died. In her Petition for Letters of Administration, Rosa declared that the known heirs of VAQ were Vicente Aguon Pinaula (VAP), Aurora's son, and Juan. Rosa became administratrix of VAQ's estate. These probate proceedings dragged on for many years. In 1918, Rosa was appointed guardian of her murdered husband's estate. In 1926, the probate court cited Rosa with failure to render an accounting of the estate. She attempted to account to the court in a letter in which she claimed to have divided the land among the heirs, which included herself, Juan, and VAP. Based on this letter, the probate court declared the proceedings closed, but did not issue a decree of distribution.
 
 
 7
 The extra-judicial conveyance of estate assets referred to by Rosa in her letter to the court is evidenced by a March 15, 1920 deed of partition. The deed purports to divide Estate 12 between the three parties who executed the deed, Rosa, Juan, and VAP. This deed was recorded.
 
 
 8
 On May 28, 1931, Rosa, Juan, and VAP executed and recorded a "cautionary notice" assigning their interests in Estate 12 to the other two and setting off specific portions of the property to each. The notice contained the following language:
 
 
 9
 That each of us does hereby renounce, the one in favor of the other, such difference in kind or in value which may exist, as the result of their assignment of each's share, between or among one another's share, and that this renunciation will be hereafter taken and considered to mean the loss of right on the part of the one against the other of and among us, to claim before the courts of Guam, for recovery of such difference, in kind or in value, as the outcome of this deed.
 
 
 10
 On July 1, 1933, Rosa conveyed her interest in Estate 12 by Deed of Sale to Maria and Francisco Cruz. Francisco died and his interest in the property vested in Maria on August 24, 1948 under a probate court decree. The decree was recorded April 2, 1951.
 
 
 11
 On September 3, 1948, Maria sold and conveyed a portion of her land to Ramon Perez Calvo. This deed was recorded January 9, 1962.
 
 
 12
 The Superior Court of Guam ruled that the Aguons were estopped from asserting their title in Lomsed. The Superior Court found that the Aguons' predecessors failed to record the 1904 deeds of cession, negligently executed the deed of partition in 1920, and failed to record a cautionary notice in 1931 when Rosa Aguon sold Lomsed to the Cruzes. The lower court held that these acts and omissions resulted in Ramon Perez Calvo acting to his detriment when he paid value for land without notice that Rosa Aguon had been disqualified from inheriting Lomsed. Therefore, the Superior Court held that the Calvos may register Lomsed in their name.
 
 Standard of Review
 
 13
 In this case, we must address the question whether the applicable rule of decision is equitable estoppel or the Marketable Title Act, Guam Civ.Code Sec. 1218 et seq. (1972). This is a question of law and, as such, is normally reviewable de novo. United States v. McConney, 728 F.2d 1195, 1201 (9th Cir.) (en banc), cert. denied, 469 U.S. 824, 105 S.Ct. 101, 83 L.Ed.2d 46 (1984). In this case, however, we apply a deferential standard of review.
 
 
 14
 The District Court of Guam serves in two distinct capacities. It can act as a Federal District Court. The District Court of Guam sitting as the Appellate Division also functions as a local territorial appellate court, the jurisdiction of which is determined exclusively by the Guam legislature. 48 U.S.C. Sec. 1424(a). Since we are required to give a high degree of deference to territorial courts' determinations of local law, we must affirm a decision of the Appellate Division "on a matter of local law, custom or policy if the decision is based upon a tenable theory and is not inescapably wrong or manifest error." Schenck v. Gov't of Guam, 609 F.2d 387, 390 (9th Cir.1979). Accord People of the Territory of Guam v. Yang, 800 F.2d 945, 946 (9th Cir.1986); Electrical Construction & Maintenance Co. v. Maeda Pacific Corp., 764 F.2d 619, 620 n. 1 (9th Cir.1985); Laguana v. Guam Visitors Bureau, 725 F.2d 519, 520 (9th Cir.1984); Chase Manhattan Bank v. Gems-by-Gordon, 649 F.2d 710, 712 (9th Cir.1981).
 
 Discussion
 
 15
 Because Guam has enacted the Marketable Title Act, Guam Civ.Code Sec. 1218 et seq. (1972), the application of equitable estoppel to the facts of this case is manifest error. The decision below is therefore reversed as based on an untenable theory of law.
 
 
 16
 The Guam Legislature intended to provide a statutory remedy in place of the equitable estoppel doctrine in cases like the one before us. The Marketable Title Act contains the following statement of legislative purpose:
 
 
 17
 This Article shall be construed to effect the legislative purpose of simplifying the facilitating of land title transactions by allowing persons to deal with the record title owner as defined herein; to rely upon the record title covering a period prior to January 1, 1935, and to that end to bar all claims that affect or may affect the interest thus dealt with, the existence of which claim arises out of or depends upon any act, transaction, event or omission antedating January 1, 1935, unless a notice of such claim as provided in this Article shall have been duly filed for record. The claims hereby barred shall mean any and all interests of any nature whatever, however denominated....
 
 
 18
 Guam Civ.Code Sec. 1218.10. The Act controls the dispute in this case. Section 1218.1 states:
 
 
 19
 Any person having the legal capacity to own land in the Territory of Guam, who has an unbroken chain of title to any interest in land by himself and his immediate and remote grantors since January 1, 1935, and is in possession of such land, shall be deemed to have a marketable record title to such interest, subject only to such claims thereto and defects of title as are not extinguished or barred by the application of the provisions of this Article and instruments which have been recorded since January 1, 1935.
 
 
 20
 Guam Civ.Code Sec. 1218.1. Section 1218.2(a) provides that a person shall be deemed to have an unbroken chain of title to an interest in land when the official public records in the possession of the Recorder of the Territory of Guam disclose a conveyance or other title transaction dated and recorded prior to January 1, 1935, which purports to create such interest in the person or his immediate grantors, with nothing appearing of record purporting to divest them of such interest. Finally, Sec. 1218.3 provides that one who takes from a grantor who had marketable title under Sec. 1218.1 takes the interest free and clear of all other interests or claims, "the existence of which depends in whole or in part upon any act, transaction, event or omission that occurred prior to January 1, 1935 ...", unless any person making a claim or asserting an adverse interest or change against the title shall on or before August 1, 1960, record a notice setting forth the nature of the claim, interest or change.
 
 
 21
 Neither party addressed the application of the Marketable Title Act in the courts below or in their appellate briefs. Pursuant to this court's order, the parties filed supplemental briefs. At the oral argument the parties conceded that the Act might apply to this case and stated that they had simply overlooked the statute. The appellee nevertheless urged the panel not to apply the Act, but rather to decide the case on equitable estoppel grounds.
 
 
 22
 Although federal appellate courts will not normally consider an issue not passed upon below, they have the power to do so and may exercise that power in their discretion. Singleton v. Wullf, 428 U.S. 106, 120-21, 96 S.Ct. 2868, 2877 (1976); Bolker v. Commissioner, 760 F.2d 1039, 1042 (9th Cir.1985). The general rule in this circuit that the Court of Appeals will not exercise this discretion is "merely a rule of practice, however, and can be relaxed where, for example, significant questions of general impact are raised; injustice might otherwise result; [or] plain error has occurred...." People of the Territory of Guam v. Okada, 694 F.2d 565, 570 n. 8 (9th Cir.1982), cert. denied, 469 U.S. 1021, 105 S.Ct. 441, 83 L.Ed.2d 367 (1984). See also Krause v. Sacramento Inn, 479 F.2d 988, 989 (9th Cir.1973).
 
 
 23
 Although we recognize that raising a new issue on appeal may have the practical effect of prolonging this litigation, we nevertheless exercise our discretion to apply the Marketable Title Act. This is one of those cases in which the courts below were not presented with and did not consider the governing theory of law. As we stated, supra, the Marketable Title Act supplants the equitable estoppel theory in this case and is not merely an alternative method of resolving the dispute. Under these circumstances, failure to consider the Act is clear error and to resolve the case under an inapplicable legal standard could result in a "miscarriage of justice" or call into question the "integrity of the judicial process." See Bolker v. Commissioner, 760 F.2d at 1042.
 
 
 24
 If it were possible to affirm based on the facts in the record under the Marketable Title Act, we would do so. This court may affirm a correct decision on any basis supported by the record. United States v. State of Washington, 641 F.2d 1368, 1371 (9th Cir.1981) (citing United States v. Humboldt County, 628 F.2d 549, 551 (9th Cir.1980), cert. denied sub nom Duwamish Indian Tribe v. Washington, 454 U.S. 1143, 102 S.Ct. 1001, 71 L.Ed.2d 294 (1982)). We are unable to do so in this case because factual determinations not already in the record must be made in order to properly apply the Act. For example, the record lacks factual determinations as to whether Calvo is currently in possession of the land at issue and whether Aguon filed a Sec. 1218.3 Notice of Claim. Remand to the Superior Court is therefore appropriate to give the parties a chance to develop their arguments and proof in light of the new theory. See United States v. Patrin, 575 F.2d 708, 712 (9th Cir.1978).
 
 
 25
 Because we hold that equitable estoppel is an untenable theory upon which to resolve the merits of this case, we do not reach the question whether the Superior Court and Appellate Division properly applied that doctrine.
 
 
 26
 The three judge panel retains jurisdiction of this case for all future matters.
 
 
 27
 REVERSED AND REMANDED.