Bobbie Jean GREEN,
Plaintiff–Appellant,

v.

LOS ANGELES COUNTY SUPERIN-
TENDENT OF SCHOOLS; Los Angeles
County Office of Education; Los Ange-
les County Board of Education, Defen-
dants–Appellees.

No. 88–5830.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 6, 1989.

Decided Aug. 30, 1989.

Bobbie Jean Green, Bellingham, Wash., pro se.

Lamont N. White, Washington, D.C., for plaintiff-appellant.

Tom A. Jerman, Los Angeles, Cal., for defendants-appellees.

Before CANBY, WIGGINS and O'SCANNLAIN, Circuit Judges.

WIGGINS, Circuit Judge:

Appellant Bobbie Jean Green appeals the district court's dismissal of her discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. (1982) and the Civil Rights Act of 1866, 42 U.S.C. § 1983 (1982) because they were untimely. The district court held that Green's Title VII claim was untimely under 42 U.S.C. § 2000e–5(c), (e) because she filed her charge of discrimination with the California Department of Fair Employment and Housing (DFEH) more than 240 days after the last act of alleged discrimination, and the DFEH did not terminate its processing of Green's claim by waiving jurisdiction to the Equal Employment Opportunity Commission (EEOC) until more than 300 days from the last act of alleged discrimination. The district court dismissed Green's section 1983 claim as untimely because it was filed more than a year after the Supreme Court's decision in *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

Green appeals the dismissal of both claims. We reverse the dismissal of the Title VII claim and affirm the dismissal of the section 1983 claim.

## I

## BACKGROUND

### A. *Title VII Time Limit Provisions*

Under section 706(e) of Title VII, 42 U.S.C. § 2000e–5(e),[1] a complainant must file charges with the EEOC within 180 days of the occurrence of the alleged discrimination. If, however, as is the case here, a complainant initially institutes proceedings with a state or local agency with authority to grant or seek relief from the alleged discrimination, the time limit for filing with the EEOC is extended to 300 days. *Id.*

Section 706(c) of Title VII, 42 U.S.C. § 2000e–5(c)[2] provides that a charge may

---

**1.** Section 706(e) provides:

A charge under this section shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred and notice of the charge (including the date, place and circumstances of the alleged unlawful employment practice) shall be served upon the person against whom such charge is made within ten days thereafter, except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has termi-

nated the proceedings under the State or local law, whichever is earlier, and a copy of such charge shall be filed by the Commission with the State or local agency.

**2.** Section 706(c) provides:

In the case of an alleged unlawful employment practice occurring in a State, or political subdivision of a State, which has a State or local law prohibiting the unlawful employment practice alleged and establishing or authorizing a State or local authority to grant or seek relief from such practice or to institute criminal proceedings with respect thereto upon receiving notice thereof, no charge may be filed under [subsection (b) of this section] by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated, provided that such sixty-day period shall be extended to one

not be filed with the EEOC "before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated." The sixty day provision is designed to "give States and localities an opportunity to combat discrimination free from premature federal intervention." *EEOC v. Commercial Office Products Co.,* 486 U.S. 107, 108 S.Ct. 1666, 1669, 100 L.Ed.2d 96 (1988). The net effect of sections 2000e–5(c) and 2000e–5(e) is that a complainant who wishes to file a charge of discrimination with the EEOC must file the charge with the appropriate state or local agency within 240 days of the alleged discriminatory conduct in order to ensure that the charge may be filed with the EEOC within the 300–day limit. *Id.* Even if the complainant files with the appropriate state or local agency after 240 days, however, "the charge still may be timely filed with the EEOC if the state or local agency terminates its proceedings before 300 days." *Id.*

## B. *Facts and Proceedings Below*

Green was hired by appellee Los Angeles County Office of Education (LACOE) on October 30, 1980, as a teleprocessing analyst. Except for a short period following an automobile accident, she worked in that capacity until either April 6 or April 10, 1984.[3]

Green filed a charge of discrimination against LACOE with the DFEH alleging race and sex discrimination and sexual harassment. She alleged that she was sexually harassed by other employees and was denied training and relocation because she was a black woman. The charge, which indicated that the most recent incident of discrimination occurred on April 10, 1984, was received by the DFEH on January 24, 1985, 289 days after April 10, 1984. On January 31, 1985, 296 days after April 10, 1984, a DFEH consultant sent Green a

letter stating that the DFEH "will waive processing of your complaint to the federal Equal Employment Opportunity Commission.... The Department of Fair Employment and Housing will close your case."

On February 5, 1985, 301 days after April 10, 1984, the DFEH district administrator transmitted Green's charge to the EEOC with a transmittal form, indicating: "Pursuant to the worksharing agreement, this charge is to be initially processed by the EEOC." The worksharing agreement then in effect between the EEOC and the DFEH provided, in relevant part, that each agency was the agent of the other for the purpose of receiving charges; that charges received first by DFEH within 241 and 300 days after the alleged discrimination would be processed initially by EEOC and that the DFEH waived its 60–day period of exclusive jurisdiction over these charges; and that notwithstanding the waiver provisions, DFEH could request in writing, and be granted, the right initially to process any charge.

On February 10, 1985, the district administrator sent a "Notice of Case Closure" to Green which stated:

> The consultant assigned to handle subject discrimination complaint which you filed with the Department of Fair Employment and Housing has recommended that the case be closed on the basis of processing waived to another agency.
>
> Please be advised that this recommendation has been accepted and your case has been closed effective 2/07/85.

Green received a Right to Sue Notice from the EEOC and filed this pro se action on July 28, 1986, alleging claims under both Title VII and section 1983. On November 12, 1987, LACOE filed a motion for summary judgment on the grounds that Green's Title VII and section 1983 claims were untimely. LACOE argued that

---

hundred and twenty days during the first year after the effective date of such State or local law. If any requirement for the commencement of such proceedings is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been

commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State or local authority.

**3.** Green testified in her deposition that on her last day, she came into work, but left before reporting in. She could not remember whether it was April 6 or April 10.

Green's Title VII claim was untimely under section 2000e–5(c) because Green filed her charge after 240 days and the DFEH did not waive its right to process Green's claim until February 7, 1985, 303 days after the latest alleged incident of discrimination. LACOE alleged that Green's section 1983 claim should be dismissed because she failed to file it within one year of *Wilson* as required under *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). LACOE also argued that Green had failed to establish a prima facie case of race or sex discrimination.

In a minute order issued January 7, 1987, the district judge held that Green had produced sufficient evidence to defeat the portion of LACOE's motion directed at the merits of Green's Title VII claim, but requested further briefing on the timeliness issues. After receiving additional briefs from both parties, the court issued a second minute order dismissing the action. The district court noted that the January 31, 1985, notice from DFEH was "in the future tense" and the February 10, 1985, notice indicated that DFEH had accepted a "recommendation" and had closed the case "effective 02/07/85." Based on these facts, the court concluded that "there can be no genuine dispute that the waiver in this case occurred after the expiration of the 300 day limitation period." The worksharing agreement was neither raised by the parties nor discussed by the district court. The court also held that Green had not filed her section 1983 claim within one year from the date of *Wilson* and that it was thus untimely. This appeal followed. We have jurisdiction under 28 U.S.C. § 1291 (1982).

## II

## STANDARD OF REVIEW

Summary judgment is appropriate only when no genuine issue of material fact exists and the moving party is clearly entitled to prevail as a matter of law. *See Ybarra v. Reno Thunderbird Mobile Home Village,* 723 F.2d 675, 677 (9th Cir. 1984); *State ex rel. Edwards v. Heimann,* 633 F.2d 886, 888 (9th Cir.1980). We view the evidence in the light most favorable to Green in order to determine whether there

was a genuine issue as to any material fact. *See Ybarra,* 723 F.2d at 677; *Reed v. Lockheed Aircraft Corp.,* 613 F.2d 757, 759 (9th Cir.1980).

## III

## ANALYSIS

### A. *Title VII Claim*

The issue on appeal is whether Green's claim was filed with the EEOC within the 300–day limitation period contained in section 2000e–5(e). At the outset we must determine the date the 300–day period was triggered. Green contends that the date from which the 300–day period should be calculated is January 28, 1986. Green argues that LACOE's discrimination against her did not end on April 10, 1984, but continued afterwards in the form of denied medical leave and benefits to which she was entitled, as well as poor recommendations to other potential employers. She contends that LACOE's discrimination against her continued until she was formally discharged on January 28, 1986. In essence, Green relies on the "continuing violation" doctrine, which, if employed, would bring the pre-April 10, 1984, conduct at which her claim is directed within the 300–day period. *See Williams v. Owens–Illinois, Inc.,* 665 F.2d 918, 924 (9th Cir.) ("[A] systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period ... [because] the continuing system of discrimination operates against the employee and violates his or her rights up to a point in time that falls within the applicable limitations period."), *cert. denied,* 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982).

LACOE contends that we should not consider this argument because it was not raised below. We need not decide this question, however, because the discriminating conduct alleged to have taken place after April 10, 1984, was not contained in Green's EEOC charge.

 Incidents of discrimination not included in an EEOC charge may not be considered by a federal court unless the

new claims are " 'like or reasonably related to the allegations contained in the EEOC charge.' " *Brown v. Puget Sound Elec. Apprenticeship & Training Trust*, 732 F.2d 726, 729 (9th Cir.1984) (quoting *Oubichon v. Northern Am. Rockwell Corp.*, 482 F.2d 569, 571 (9th Cir.1973)), *cert. denied*, 469 U.S. 1108, 105 S.Ct. 784, 83 L.Ed.2d 778 (1985); *accord Stache v. International Union of Bricklayers and Allied Craftsmen*, 852 F.2d 1231, 1234 (9th Cir. 1988). In determining whether an allegation under Title VII is like or reasonably related to allegations contained in a previous EEOC charge, the court inquires whether the original EEOC investigation would have encompassed the additional charges. *See Kaplan v. International Alliance of Theatrical and Stage Employees and Motion Picture Machine Operators*, 525 F.2d 1354, 1359 n. 3 (9th Cir.1975) ("[i]t is only logical to limit the permissible scope of the civil action to the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination") (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970)); *see also Brown*, 732 F.2d at 730 ("[w]here claims are *not* so closely related that agency action would be redundant, the EEOC must be afforded an opportunity to consider disputes before federal suits are initiated"); *Stache*, 852 F.2d at 1234 (relying on *Brown*). Finally, "[t]he remedial purpose of Title VII and the paucity of legal training among those whom it is designed to protect require charges filed before the EEOC to be construed liberally." *Stache*, 852 F.2d at 1233; *see also Kaplan*, 525 F.2d at 1359.

■ Green's EEOC charge is directed solely at conduct which took place while she was still actually working, and does not allege any incidents of discrimination after April 10, 1984. Her claim that LACOE discriminatorily denied her medical leave and benefits, disseminated poor recommendations, and discharged her are not related to her claims that she was sexually harassed and denied relocation and training. An investigation of the incidents which occurred while she was still working would not encompass her subsequent claims that she was denied medical leave and benefits and ultimately discharged because of her race and sex. Thus, even construing the EEOC charge liberally, we find that Green failed to exhaust her administrative remedies with respect to the additional claims. The appropriate date for determining whether Green's claims are untimely is April 10, 1984.

Green argues that even if the 300–day period was triggered on April 10, 1984, her charge was filed within the 300–day period because the DFEH's waiver of its right to process her charge in the worksharing agreement with the EEOC, which terminated the state proceedings, was effective on January 24, 1985, (289 days after April 10, 1984) when the charge was initially filed with the DFEH.[4]

■ Green's charge was filed with and received by the DFEH on January 24, 1985, 289 days after April 10, 1984. Green's charge is deemed to have been received by the EEOC on the same day, January 24, 1985, because under the worksharing agreement the DFEH was an agent of the EEOC for the purpose of receiving charges. *See McConnell v. General Tel. Co.*, 814 F.2d 1311, 1315–16 (9th Cir.1987) (charge filed with the state agency deemed to have been received by the EEOC as provided in the worksharing agreement), *cert. denied*, —— U.S. ——, 108 S.Ct. 1013, 98 L.Ed.2d 978 (1988). The charge, constructively received by the EEOC, is construed to have been held in "suspended animation" until the termination of the state proceedings, *see Love v. Pullman Co.*, 404 U.S. 522, 526, 92 S.Ct. 616, 618, 30 L.Ed.2d 679 (1972) ("EEOC may ... hold a complaint in 'suspended animation,' automatically filing it upon termination of the

---

**4.** Green argues in the alternative that even if the worksharing agreement was not self-executing, the waiver was effective on January 26, 1985 (296 days after April 10, 1984), when she received the letter from the DFEH informing her that it was waiving the initial processing of the charge. Because we conclude that the waiver contained in the worksharing agreement was self-executing and accordingly that Green's charge was deemed timely filed when it was filed with the DFEH, we need not reach this argument.

state proceedings"); *see also Commercial Office Products*, 108 S.Ct. at 1669, at which time it is deemed "filed" with the EEOC for purposes of section 2000e–5(e). The question we must resolve is whether the DFEH's waiver in the worksharing agreement of its exclusive jurisdiction over claims filed between 241 and 300 days of the occurrence of the alleged discrimination is self-executing, thus causing the state's proceedings to be terminated and the charge deemed filed with the EEOC upon filing with the DFEH. Before reaching the merits of this issue, we consider first LACOE's contention that the worksharing agreement is not properly before us because it was not raised by Green below nor discussed by the district court.

Generally we will not consider an issue raised for the first time on appeal, although we have the power to do so. *See Singleton v. Wulff*, 428 U.S. 106, 120–21, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Bolker v. Commissioner*, 760 F.2d 1039, 1042 (9th Cir.1985). The court will exercise its discretion, however, when "significant questions of general impact are raised; injustice might otherwise result; [or] plain error has occurred...." *Aguon v. Calvo*, 829 F.2d 845, 848 (9th Cir.1987) (quoting *Guam v. Okada*, 694 F.2d 565, 570 n. 8 (9th Cir.1982), *cert. denied*, 469 U.S. 1021, 105 S.Ct. 441, 83 L.Ed.2d 367 (1984)); *see also Bolker*, 760 F.2d at 1042.

■ We decide to exercise our discretion and consider the worksharing agreement. The proper interpretation of the waiver provisions contained in the worksharing agreement constitutes a significant question of general impact. The issue has not been decided in this or any other circuit and its resolution will require us to build on the principles contained in *Commercial Office Products*. Resolution of this issue is also of substantial importance. Whether a state's waiver of the 60–day deferral period constitutes a termination of its proceedings "is of substantial importance because the EEOC has used its statutory authority to enter into worksharing agreements with approximately three-quarters of the 109

state and local agencies authorized to enforce state and local employment discrimination laws." 108 S.Ct. at 1669. Additionally, injustice would result if Green, who is appearing pro se, were to "lose her day in court" because she failed to uncover the worksharing agreement until after the district court dismissed the case.[5] LACOE presents no persuasive reasons why we should not exercise our discretion and consider the worksharing agreement.

■ We begin our analysis by noting that the use of worksharing agreements between state and local agencies and the EEOC has been encouraged by Congress and approved by the Supreme Court. Congress has authorized the EEOC to cooperate with state and local agencies by entering into "written agreements" with those agencies in order to promote "effective enforcement" of Title VII. *See* 42 U.S.C. § 2000e–8(b); *see also* 42 U.S.C. § 2000e–4(g)(1). Accordingly, the EEOC has entered into "worksharing agreements" with approximately 81 of the 109 designated state and local fair employment practice deferral agencies that enforce state and local employment discrimination laws. *Commercial Office Products*, 108 S.Ct. at 1669. These agreements, like the one at issue here,

> typically provide that the state or local agency will process certain categories of charges and that the EEOC will process others, with the state or local agency waiving the 60–day deferral period in the latter instance. In either instance, the non-processing party to the worksharing agreement generally reserves the right to review the initial processing party's resolution of the charge and to investigate the charge further after the initial processing party has completed its proceedings.

*Id.* at 1669–70 (citation omitted).

The Supreme Court found the use of worksharing agreements consistent with 42 U.S.C. §§ 2000e–4(g)(1) and 2000e–8(b) in *Commercial Office Products*. 108 S.Ct. at

---

**5.** To decide this case without considering the worksharing agreement would thus cause a "miscarriage of justice" or call into question

"the integrity of the judicial system," thus satisfying the first exception under *Bolker*, 760 F.2d at 1042.

1675 ("These sections clearly envision the establishment of some sort of worksharing agreements between the EEOC and state and local agencies, and they in no way preclude provisions designed to avoid unnecessary duplication of effort or waste of time."). In *Commercial Office Products,* the Court concluded that a state agency's waiver of the 60–day deferral period, pursuant to a worksharing agreement similar to the one in this case, "terminated" its proceedings under section 2000e–5(c), notwithstanding the provision in the worksharing agreement permitting the nonprocessing party to review the charge after the initial processing party's resolution of the case. *Id.* at 1669–71. Reviewing the legislative history of section 2000e–5(c), the Court concluded that the two goals underlying the deferral provisions—deference to the states and efficient processing of claims—supported the EEOC's conclusion that waiver of the 60–day deferral period was sufficient to "terminate" the local agency's proceedings. *Id.* at 1671–74.[6]

Unfortunately, *Commercial Office Products* does not provide direct guidance in resolving the issue in this case: whether the waiver provision in a worksharing agreement is self-executing. Because the state agency sent a notice of waiver to the EEOC before the expiration of the 300–day period, the Court did not consider whether the provision in the worksharing agreement itself or the notice of waiver triggered the state agency's waiver.[7] We disagree with the parties that the Court's discussion of the worksharing agreement provides any indication one way or the other whether a state's waiver of its exclusive jurisdiction should be treated as self-executing. We refuse the parties' invitation to read into the Court's decision an implicit finding based on isolated language from various portions of the Court's opinion.[8]

The EEOC argues that its regulations and procedural directives take the position that a state agency's waiver in a worksharing agreement of initial processing rights for specified categories of charges causes a

---

**6.** The Court also found its construction of section 2000e–5(c) consistent with other, related sections of Title VII. *Commercial Office Products,* 108 S.Ct. at 1674.

**7.** The charging party filed a charge of discrimination with the EEOC 290 days after the last act of alleged discrimination. *Commercial Office Products,* 108 S.Ct. at 1670. Four days later, the EEOC sent a copy of that charge, and a charge transmittal form, to the Colorado Civil Rights Division (CCRD), the state agency authorized to process charges of discrimination. The form stated that pursuant to the worksharing agreement, the EEOC would initially process the charge. *Id.* Prior to the expiration of the 300 day period, the CCRD returned the charge transmittal form to the EEOC indicating it waived its right under Title VII initially to process the charge. The CCRD then sent a letter to the charging party stating that it waived its right to process the charge. *Id.*

**8.** The EEOC relies on excerpts from several portions of the opinion in support of its position that the Court treated the waiver as occurring in the agreement itself. For example, the EEOC cites to the Court's statement that a waiver is a "voluntary choice made through individually negotiated agreements." *Commercial Office Products,* 108 S.Ct. at 1673. This statement, however, was meant as support for the conclusion that a state's waiver of the deferral provision satisfies the goal of giving deference to the states because the waiver is voluntarily made in

a written document. *Id.* The statement does not indicate one way or the other exactly when the waiver becomes effective.

LACOE, on the other hand, cites the Court's reliance on *Isaac v. Harvard University,* 769 F.2d 817 (1st Cir.1985), in support of its position. In *Isaac,* the First Circuit held that a state agency "terminated" its proceedings when it sent a transmittal form to the EEOC stating that it "will not process this charge ... per agreement [with] the EEOC." *Id.* at 824.

The Court's citation to *Isaac* does not aid in the interpretation of the Court's ruling for two reasons. Initially, the First Circuit in *Isaac,* like the Court in *Commercial Office Products,* did not specifically consider the question whether the worksharing agreement was self-executing because the state agency waived consideration of the claim well within the 300–day limit. *Id.* at 819. In any event, the Supreme Court's discussion of *Isaac* was limited to review of the First Circuit's analysis of the definition and common usage of the term "terminate" for the purpose of determining whether a state agency "terminates" its proceedings when it declares that it will not proceed for a specified interval of time. *Commercial Office Products,* 108 S.Ct. at 1671.

Determination of when the waiver was effective simply was not before the Court in *Commercial Office Products,* and we think it unwise to attempt to resolve the present issue by reading hidden meaning into the Court's opinion.

charge within a waived category to be deemed filed immediately with the EEOC.[9] The EEOC argues that this interpretation is reasonable and thus entitled to deference by this court.

"[I]t is axiomatic that the EEOC's interpretation of Title VII, for which it has primary enforcement responsibility, need not be the best one by grammatical or any other standards. Rather, the EEOC's interpretation of ambiguous language need only be reasonable to be entitled to deference." *Commercial Office Products*, 108 S.Ct. at 1671. The EEOC's interpretation that the waiver is self-executing is not only reasonable, but in our opinion is the only logical interpretation of the agreement. Section III.E.5 of the agreement provides that all charges received by the DFEH within 241 and 300 days after the alleged discrimination are to be processed by the EEOC. Section III.C provides in part: "In order to facilitate early resolution of [the initial processing of charges assigned to the EEOC], the DFEH waives the rights granted to it under Section 2000e–5(c) ... of Title VII to have an exclusive opportunity to resolve, for a period of 60 days, the charges assigned to the EEOC for initial processing." Section III.F provides that "the DFEH or the EEOC may request in writing, and be granted the right to initially process any charge." Read together, these sections unambiguously indicate that the waiver under section III.C is self-executing and that no additional steps are necessary to invoke the waiver. We agree with the EEOC that the agreement precludes the DFEH from processing waived charges unless it notifies the EEOC that it wishes initially to process a particular charge. LACOE's argument that section III.F "negates any automatic waiver" is without merit.

The EEOC's interpretation of the agreement is also consistent with the two goals of the deferral provisions discussed in *Commercial Office Products*. The first,

according deference to the states by providing the states a "reasonable opportunity to act under state law before commencement of any Federal proceedings," *id.* at 1672, is not offended by the conclusion that the waiver provision in the worksharing agreement is self-executing. This goal is fully satisfied when states voluntarily waive that opportunity "through individually negotiated instruments." *Id.* Nothing in Title VII requires that the state reiterate its waiver with each charge or provide any particular kind of notice that it does not intend to process a charge.

The EEOC's interpretation of the agreement is also consistent with the second goal of the deferral provisions, "time economy and the expeditious handling of cases." *Id.* at 1673. To hold that a waiver does not occur until the state agency confirms what it has already stated in the worksharing agreement would simply add a procedural technicality that would delay the processing of charges. *Cf. Love v. Pullman Co.*, 404 U.S. 522, 526, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972) (requiring a "second 'filing' by the aggrieved party after termination of state proceedings would serve no purpose other than the creation of an additional procedural technicality"). As this case demonstrates, requiring additional notice might have the effect of rendering untimely a charge filed within the 300–day limit, despite the joint effort of the DFEH and the EEOC to avoid such a result. *Commercial Office Products*, 108 S.Ct. at 1674.

Finally, although none of the other circuits have considered the question, most of the district courts that have addressed the issue have concluded that the state or local agency waives the 60–day period simply by entering into the worksharing agreement. *See, e.g., EEOC v. Velsicol Chem. Corp.*, 606 F.Supp. 104, 106 (W.D.Tenn.1984); *Thompson v. International Ass'n of Machinists and Aerospace Workers*, 580

---

9. When a charge is received first by the EEOC, the Commission's regulations provide that if it is "within a category of charges over which the 706 Agency has waived its rights to the period of exclusive processing ..., the charge is deemed to be filed with the Commission upon re-

ceipt...." 29 C.F.R. § 1601.13(a)(4)(ii)(A). A charge submitted first to a state or local agency is deemed to be filed with the EEOC upon "waiver of the 706 Agency's right to exclusively process the charge...." 29 C.F.R. § 1601.13(b).

F.Supp. 662, 666 (D.D.C.1984); *Douglas v. Red Carpet Corp. of America*, 538 F.Supp. 1135, 1139 (E.D.Pa.1982); *Yeung v. Lockheed Missiles & Space Co.*, 504 F.Supp. 422, 424 (N.D.Cal.1980); *Greenlow v. California Dept. of Benefit Payments*, 413 F.Supp. 420, 423 (E.D.Cal.1976).

Because we find the worksharing agreement self-executing, Green's charge must be deemed to have been filed with the EEOC when it was filed with the DFEH. Because the complaint was filed with the DFEH on January 24, 1985, 289 days after April 10, 1984, the filing was timely under 42 U.S.C. § 2000e–5(e).[10]

### B. *Section 1983 Claim*

The district court dismissed Green's section 1983 claim because it was not filed within one year of April 17, 1985, the date *Wilson v. Garcia*, 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985), was decided. If April 10, 1984, is the date the statute of limitations began to run, the one year period following the date *Wilson* was decided is the applicable period of limitation. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir.1987) (where cause of action in California arises prior to *Wilson* but is filed after *Wilson*, the statute of limitations is either three years from the time the cause of action arises or one year from the date *Wilson* was decided, which ever period expires first).

■ Green again contends, however, that the pre-April 10, 1984, incidents are part of a continuing pattern of discriminatory conduct that did not end until she was dismissed. Initially, we reject LACOE's contention that Green's continuing violating argument was not raised below. In her supplemental brief filed with the district court, Green specifically discussed the post-April 10, 1984, incidents in the context of her section 1983 claim. Nevertheless, we conclude that there is no question of fact that the incidents occurring after April 10, 1984, were not sufficiently related to the pre-April 10, 1984, conduct, and that the continuing violating theory therefore does not apply.

The continuing violation theory generally has been applied in the context of a continuing policy and practice of discrimination on a company-wide basis; a plaintiff who shows that a policy and practice operated at least in part within the limitation period satisfies the filing requirements.

[A] systematic policy of discrimination is actionable even if some or all of the events evidencing its inception occurred prior to the limitations period. The reason is that the continuing system of discrimination operates against the employee and violates his or her rights up to a point in time that falls within the applicable limitations period. Such continuing violations are most likely to occur in the matter of placements or promotions.

*Williams v. Owens–Illinois, Inc.*, 665 F.2d 918, 924 (9th Cir.) (citation omitted), *cert. denied*, 459 U.S. 971, 103 S.Ct. 302, 74 L.Ed.2d 283 (1982); *see also Domingo v. New England Fish Co.*, 727 F.2d 1429, 1443 (9th Cir.1984), *modified*, 742 F.2d 520 (1984); *Reed v. Lockheed Aircraft Co.*, 613 F.2d 757, 760 (9th Cir.1980).

■ A discriminatory system or policy, however, is not the only means by which a plaintiff may prove a continuing violation. "To establish a continuing violation [a plaintiff has] to show 'a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitations] period.'" *Valentino v. United States Postal Serv.*, 674 F.2d 56, 65 (D.C.Cir.1982) (quoting B. Schei & P. Grossman, *Employment Discrimination Law* 232 (Supp.1979)); *see also Bruno v. Western Elec. Co.*, 829 F.2d 957, 961 (10th Cir.1987) (quoting *Valentino*). A continuing violation may thus be established not only by demonstrating a company wide policy or practice, but also by demonstrating a series of related acts against a single individual. *Id.* 829 F.2d at 961. In the latter instance, "[the] question ... boils down to whether sufficient evidence supports a determination that the 'alleged discriminatory acts are related closely enough to consti-

---

**10.** We need not reach, therefore, Green's alternative argument that the DFEH's waiver of the 60–day period through its correspondence was effective before the 300–day limitation period had expired.

tute a continuing violation.'" *Id.* (quoting *Berry v. Board of Supervisors,* 715 F.2d 971, 981 (5th Cir.1983)).

Green does not allege a company wide policy of discrimination, but several incidents of harassment and discrimination against herself. Her allegations may be separated into two separate categories: first, the allegations of harassment while she was working before April 10, 1984, and, second, the incidents leading up to and including her discharge. In ruling on Green's Title VII claim, we found the alleged incidents prior to April 10, 1984, totally separate from LACOE's conduct after that date. The allegations of discrimination prior to April 10, 1984, concern the harassment from other employees and LACOE's failure to train and relocate her. Green's allegations of discrimination pertaining to the period after she left work involve LACOE's refusal to place her on medical leave and provide medical benefits, the dissemination of poor references, and her discharge. The two categories of charges "represent a separate form of alleged employment discrimination." *London v. Coopers & Lybrand,* 644 F.2d 811, 816 (9th Cir.1981) (concluding that discharge was separate act from post discharge conduct for purpose of continuing violation doctrine). The statute of limitations on Green's section 1983 claim therefore began to run on April 10, 1984, and the claim must be dismissed under *Usher.*

## IV

## CONCLUSION

We reverse the dismissal of Green's Title VII claim. The DFEH's waiver of the 60-day exclusive jurisdiction period in section III.C of the worksharing agreement is self-executing. When Green filed her charge with the DFEH 289 days after the last occurrence of alleged discrimination, it was constructively received and filed with the EEOC on that date. Green's charge was therefore timely under 42 U.S.C. § 2000e–5(e). We affirm the dismissal of Green's Section 1983 claim because it was not filed within one year of the issuance of *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985).

Each party shall bear their own costs on appeal.

AFFIRMED in part, REVERSED in part, and REMANDED.