RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0081p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

CLIMMONS JONES, JR.,

*Plaintiff-Appellant*,

*v.*

FEDERAL EXPRESS CORPORATION,

*Defendant-Appellee*.

No. 19-5073

─────────────────

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:18-cv-02526—Jon Phipps McCalla, District Judge.

Argued: January 31, 2020

Decided and Filed: March 12, 2020

Before: SUTTON, BUSH, and READLER, Circuit Judges.

─────────────────

## COUNSEL

─────────────────

**ARGUED:** Terrence O. Reed, FEDERAL EXPRESS CORPORATION, Memphis, Tennessee, for Appellee. Philip M. Kovnat, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae. Climmons Jones, Jr., Memphis, Tennessee, pro se. **ON BRIEF:** Barak J. Babcock, FEDERAL EXPRESS CORPORATION, Memphis, Tennessee, for Appellee. Paul D. Ramshaw, EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Washington, D.C., for Amicus Curiae. Climmons Jones, Jr., Memphis, Tennessee, pro se.

─────────────────

## OPINION

─────────────────

JOHN K. BUSH, Circuit Judge. Climmons Jones, Jr. filed a Title VII race-discrimination charge with the Equal Employment Opportunity Commission (EEOC) against Federal Express

Corporation (FedEx) 252 days after FedEx terminated his employment. The EEOC then issued Jones a right-to-sue letter, and he sued FedEx in the United States District Court for the Western District of Tennessee. The district court granted FedEx's motion to dismiss, holding that Jones's suit was untimely because he filed his charge outside the 180-day time frame generally required for filing with the EEOC under section 706(e)(1) of the Civil Rights Act, 42 U.S.C. § 2000e-5(e)(1). We hold that Jones timely filed his charge because *EEOC v. Commercial Office Products Company*, 486 U.S. 107 (1988), requires this result. We also excuse Jones, a pro se litigant, for not arguing before the district court the particular grounds on which we rest our holding, because the resolution we reach is beyond doubt in light of *Commercial Office Products* and other relevant legal authority. And injustice would result if we did not address Jones's argument on appeal, given the circumstances of his case, including that he is a pro se litigant and he allegedly relied on advice given by the EEOC that the 300-day filing period would apply. We therefore **REVERSE** and **REMAND** for further proceedings.

## I.

Jones worked as a security officer at a shipping center operated by FedEx. One of his duties was to watch an X-ray monitor to detect weapons in packages about to be loaded on FedEx aircraft. On August 4, 2017, Jones failed to detect a weapon. Twelve days later, FedEx terminated his employment, allegedly because he failed to detect that weapon. According to Jones, who is African American, the consequences for failing to detect a weapon were harsher for him and another African American officer than they were for certain white officers. Jones filed a charge with the EEOC alleging discrimination on April 25, 2018, which was 252 days after his termination. Jones sought reemployment and $250,000 in lost earnings and benefits. After processing his charge, the Commission issued him a notice of his right to bring suit against FedEx.

Jones subsequently filed a pro se Title VII action in the U.S. District Court for the Western District of Tennessee. FedEx moved to dismiss, arguing that Jones had failed to file a timely charge with the EEOC, which is a statutory prerequisite for commencing a federal employment-discrimination legal action. *See* 42 U.S.C. § 2000e-5(e)(1). Specifically, FedEx argued that Jones had failed to file his race-discrimination charge within 180 days of his

employment termination.  Jones opposed FedEx's motion to dismiss, arguing, in relevant part, that his charge was timely filed with the EEOC because "[t]he 180 calendar day filing deadline is extended to 300 calendar days if a state or local agency enforces a law that prohibits employment discrimination on the same basis." (R. 18 at PageID 49)  Jones argued that he was entitled to the benefit of the 300-day filing period set forth in § 2000e-5(e)(1) because the Tennessee Human Rights Commission (THRC) categorically prohibits racial discrimination.

The district court granted FedEx's motion to dismiss.  The court held that "[t]he existence of a state agency is not enough; instead, the person aggrieved must have actually 'instituted proceedings'" with the state agency.  (R. 22 at PageID 78) (quoting 42 U.S.C. § 2000e-5(e)(1)).  The court noted that Jones had not "allege[d] that he filed a charge with the Tennessee Human Rights Commission [(THRC)], so the 300-day deadline does not apply in this case."  (R. 22 at PageID 78–79)  Jones moved to alter or amend the judgment under Rule 59(e) of the Federal Rules of Civil Procedure, arguing that his filing, if untimely, should be excused because the THRC's website and a legal advisor with the EEOC both misled him by indicating that he had 300 days to file a charge with the EEOC.  The district court denied that motion.  This appeal followed.  Before us, Jones challenges the district court's determination that his discrimination charge was untimely filed with the EEOC.  The EEOC appears as amicus before us in support of Jones.

## II.

As a general rule, Title VII requires plaintiffs to file a charge of discrimination with the EEOC within 180 days of the alleged discriminatory act.  42 U.S.C. § 2000e-5(e)(1).  However, the limitations period expands to 300 days when the plaintiff is deemed to have "initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice. . . ."  *Id.*  Such state or local agencies are known as "fair employment practices agencies" (FEPAs), and the Supreme Court has held that the EEOC may institute proceedings with a FEPA on behalf of an employee.  *See Mohasco Corp. v. Silver*, 447 U.S. 807, 816 (1980) (quoting *Love v. Pullman Co.*, 404 U.S. 522, 525 (1972)) ("[N]othing in [Title VII] suggests that the state proceedings may not be initiated by the EEOC acting on behalf of the complainant rather than by the complainant himself . . . .").

Title VII imposes another requirement relevant to his case: in general, no EEOC charge "may be filed . . . before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated" by the FEPA. 42 U.S.C. § 2000e-5(c). This statutory provision "give[s] States and localities an opportunity to combat discrimination free from premature federal intervention." *Commercial Office Prods.*, 486 U.S. at 110. However, a FEPA can waive its sixty-day exclusive period to process a charge. *See id.* at 112. When it does so, FEPA proceedings have been "terminated" within the meaning of the statute. *See id.* at 125 ("[W]e find that . . . the [FEPA's] waiver of the 60-day deferral period 'terminated' its proceedings."). At that point, the EEOC may deem any charge it has received to be filed and may begin to process it immediately. *See Love*, 404 U.S. at 526 (the EEOC may hold a charge "in 'suspended animation,' automatically filing it upon termination of the state proceedings"); *Nichols v. Muskingum College*, 318 F.3d 674, 682 (6th Cir. 2003) (holding that a state proceeding "was constructively terminated pursuant to the [FEPA's waiver] and should be deemed filed with the EEOC on that same date").

The EEOC has entered into "worksharing agreements" with most FEPAs. *Commercial Office Prods.*, 486 U.S. at 112. "These worksharing agreements typically provide that the state or local agency will process certain categories of charges and that the EEOC will process others, with the state or local agency waiving the 60-day deferral period in the latter instance." *Id.* (citation omitted). The EEOC and THRC have such a worksharing agreement. That agreement provides:

> In order to facilitate the assertion of employment rights, the EEOC and the [THRC] each designate the other as its agent for the purpose of receiving and drafting charges . . . . The EEOC's receipt of charges on the [THRC's] behalf will automatically initiate the proceedings of both the EEOC and the [THRC] for the purposes of [42 U.S.C. §§ 20003-5(c), (e)(1)].

(Mot. to Take Judicial Notice, Attachment 4, at 2). The agreement further provides that "[t]he EEOC . . . will process all Title VII . . . charges that [it] originally receives," and the THRC "waives its right of exclusive jurisdiction to initially process such charges for a period of 60 days for the purpose of allowing the EEOC to proceed immediately with the processing of such charges before the 61st day." *Id.*

Jones acknowledges that he neither filed his charge with the EEOC within 180 days of his termination, nor submitted his charge directly to the THRC. However, pursuant to the worksharing agreement between the EEOC and the THRC, the submission of his charge to the EEOC 252 days after his termination caused three things to automatically and simultaneously occur: (1) the EEOC, acting as THRC's agent, instituted a THRC proceeding; (2) the THRC terminated that proceeding pursuant to its waiver; and (3) the EEOC instituted its own proceeding. Thus, the 300-day limitations period applies, *see* 42 U.S.C. § 2000e-5(e)(1), rendering Jones's claim timely.

This conclusion is consistent with the Supreme Court's decision in *Commercial Office Products*. There, a charge was filed with the EEOC on day 290. *Commercial Office Prods.*, 486 U.S. at 113. The EEOC transmitted the charge to the FEPA with a form stating that the EEOC would do the initial processing of the charge. *Id.* The FEPA wrote back that it "waived its right under Title VII to initially process the charge" during the initial 60-day period. *Id.* The Court held that this waiver constituted a "termination" of the state agency's proceedings, which permitted the EEOC to deem a charge filed and to begin to process it immediately. *Id.* at 125. The plaintiff thus timely filed his claim pursuant to the 300-day time limit for filing with the EEOC. *Id.* The only meaningful difference between Jones's case and *Commercial Office Products* is that here, the EEOC did not manually transmit the claim to the FEPA, and the FEPA did not send a letter waiving its right to process the charge. Rather, pursuant to the worksharing agreement, those two steps happened automatically upon Jones's filing of his complaint with the EEOC. (Mot. to Take Judicial Notice, Attachment 4, at 2–3). However, there is nothing in the reasoning of *Commercial Office Products* to suggest that the factual distinction here should make any difference to the outcome.

Other circuits have unanimously held, as we do today, that similar worksharing agreements between the EEOC and FEPAs are self-executing, permitting the EEOC to commence proceedings when the charge is filed. *See, e.g.*, *Velazquez-Perez v. Developers Diversified Realty Corp.*, 753 F.3d 265, 276–77 (1st Cir. 2014); *Tewksbury v. Ottaway Newspapers*, 192 F.3d 322, 325–28 (2d Cir. 1999); *Trevino-Barton v. Pittsburgh Nat'l Bank*, 919 F.2d 874, 879 (3d Cir. 1990); *Puryear v. Cty. Of Roanoke*, 214 F.3d 514, 518–21 & n.10 (4th

Cir. 2000); *Griffin v. City of Dallas*, 26 F.3d 610, 612–14 (5th Cir. 1994); *Johnson v. J.B. Hunt Transp. Inc.*, 280 F.3d 1125, 1129–30 (7th Cir. 2002); *Worthington v. Union Pac. R.R.*, 948 F.2d 477, 479–82 (8th Cir. 1991); *Green v. L.A. Cty. Superintendent of Sch.*, 883 F.2d 1472, 1476–80 (9th Cir. 1989); *Griffin v. Air Prods. & Chems., Inc.*, 883 F.2d 940, 943–45 (11th Cir. 1989).

Our holding that the worksharing agreement is self-executing is also consistent with EEOC regulations. The Commission has determined that when a discrimination charge "on its face constitutes a charge within a category of charges over which the FEP agency has waived its right to the period of exclusive processing . . . , the charge is deemed to be filed with the Commission upon receipt of the document." 29 C.F.R. § 1601.13(a)(4)(ii)(A). According to the EEOC, "[s]uch filing is timely if the charge is received within 300 days from the date of the alleged violation." *Id.* Given that the EEOC is the agency with primary responsibility for enforcement of Title VII, deference is due the Commission's reasonable interpretation of when proceedings are commenced and terminated under 42 U.S.C. § 2000e-5(c). *Commercial Office Prods.*, 486 U.S. at 115.

To summarize, we hold that Jones's filing with the EEOC was timely by virtue of the worksharing agreement. The terms of that agreement operated to make the 300-day, rather than the 180-day, period of 42 U.S.C. § 2000e-5(e)(1) the applicable filing window, thus establishing that Jones timely filed on day 252.

**III.**

Jones made no argument in the district court pertaining to the worksharing agreement. Instead, he argued that his charge was timely filed with the EEOC because "[t]he 180 calendar day filing deadline is extended to 300 calendar days if a state or local agency enforces a law that prohibits employment discrimination on the same basis." (R. 18 at PageID 49) Jones asserted that he was entitled to the benefit of the 300-day filing period set forth in § 2000e-5(e)(1) because the THRC categorically prohibits race discrimination. The district court properly rejected Jones's argument. But that is not the end of the legal analysis, as demonstrated above, because of the existence of the worksharing agreement.

FedEx argues that Jones forfeited his ability to make any argument pertaining to the worksharing agreement on appeal.  Normally, a party who neglects to advance a particular issue in the lower court cannot raise that issue on appeal.  *See United States v. Archibald*, 589 F.3d 289, 295–96 (6th Cir. 2009).  Nevertheless, "a federal appellate court is always empowered to resolve any issue not considered below 'where the proper resolution is beyond any doubt or where injustice . . . might otherwise result.'"  *Browne v. Crowe*, 963 F.2d 895, 898 (6th Cir. 1992) (quoting *Meador v. Cabinet for Human Res.*, 902 F.2d 474, 477 (6th Cir. 1990)), *cert. denied*, 498 U.S. 867 (1990).  The proper resolution of this case is beyond any doubt: the answer follows directly from the governing language in the statute, relevant EEOC regulations, and the worksharing agreement, as that language has been interpreted and applied by the Supreme Court, this court, and other courts of appeals.  Injustice also would result from not addressing the dispositive issue above, particularly given that Jones is a pro se litigant and he alleges that he met with an EEOC legal advisor who told him he had 300 days to file his charge.  *See Mayhew v. Allsup*, 166 F.3d 821, 823–24 (6th Cir. 1999) (citing *United States v. Chesney*, 86 F.3d 564, 568 (6th Cir. 1996)) (excusing the failure of the plaintiff, Mayhew, to raise an issue before the district court because "any neglect on the part of Mayhew in not raising the issue below [wa]s minimal").  In light of the specific circumstances here, we consider it appropriate to address the worksharing-agreement argument despite Jones's failure to raise it below.  *See Erie Cty. v. Morton Salt, Inc.*, 702 F.3d 860, 874 (6th Cir. 2012) (citing *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 922 (6th Cir. 2006)) (addressing an argument not raised before the district court "because the resolution of the case is beyond any doubt.").

Our approach aligns with that of the Ninth Circuit, which excused a pro se plaintiff's failure to raise a worksharing-agreement argument before the district court in a case presenting facts very similar to those here.  *See Green*, 883 F.2d at 1477.  There, the plaintiff, Green, filed a charge with the state agency on January 24, 1985, the 289th day after the alleged discrimination.  *Id.* at 1474.  Twelve days later and one day after the expiration of the 300-day period, the FEPA transmitted Green's complaint to the EEOC.  *Id.*  The worksharing agreement provided that all charges received by the FEPA between 241 and 300 days after the alleged discrimination were to be processed by the EEOC.  *Id.* at 1479.  Relying on the worksharing agreement, the Ninth Circuit held that Green's complaint was constructively received by the EEOC on January 24,

1985.  *Id.* at 1476.  The court concluded, as we do today, that the worksharing agreement was self-executing.  *Id.* at 1479.  Thus, Green's complaint was filed timely with the EEOC.  *Id.* at 1480.

Like Jones here , Green did not rely on the worksharing agreement in his argument before the district court.  *Id.* at 1477.  The Ninth Circuit excused Green's failure because (1) the "proper interpretation of the waiver provisions contained in the worksharing agreement constitute[d] a significant question of general impact," (2) the issue had not been decided before in the Ninth Circuit, and (3) "injustice would result if Green, who [wa]s appearing pro se, were to 'lose her day in court' because she failed to uncover the worksharing agreement until after the district court dismissed the case."  *Id.*

Here, as in *Green*, the issue being decided on appeal will have a significant impact on parties filing claims with the EEOC.  "[T]he EEOC has used its statutory authority to enter into worksharing agreements with approximately three-quarters of the 109 state and local agencies authorized to enforce state and local employment discrimination laws," *Commercial Office Prods.*, 486 U.S. at 112 (citations omitted), and parties filing claims to the EEOC need to know their filing deadlines under the worksharing agreements.  Additionally, the issue of how a worksharing agreement affects a charge submitted to the EEOC more than 180 days after the alleged discriminatory action is one of first impression in this circuit.  Finally, as noted, Jones is appearing pro se and he reasonably did not know that he needed to locate the governing worksharing agreement, especially in light of the advice he alleges that the EEOC gave him indicating that he had 300 days to file.

**IV.**

We hold that the worksharing agreement between the EEOC and the THRC is self-executing, that Jones had 300 days from the alleged discriminatory act to file his claim with the EEOC, and that Jones's charge was therefore timely.  Accordingly, we **REVERSE** the dismissal of Jones's Title VII claim and **REMAND** to the district court for further proceedings.