June 28, 1990

IN THE SUPREME COURT OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| COMMONWEALTH OF THE NORTHERN ) MARIANA ISLANDS, )      Petitioner/Plaintiff, ) | ORIGINAL ACTION NO. 90-002 |
|                vs. ) | |
| SUPERIOR COURT OF THE ) COMMONWEALTH OF THE NORTHERN ) MARIANA ISLANDS, )      Respondent, and ) | OPINION |
| MARIANO F. MENDIOLA, )      Defendant/Real Party )      In Interest. ) | |

Argued June 22, 1990

BEFORE: DELA CRUZ, Chief Justice, BORJA, Justice, and HILLBLOM, Special Judge.

BORJA, Justice:

This is an original action filed by the Commonwealth of the Northern Mariana Islands (hereafter Government) pursuant to 1 CMC § 3102(b) (P.L. 6-25), and Rule 21, R.App.Proc. The Government seeks a writ of prohibition against the Superior Court prohibiting it from exercising any jurisdiction in the criminal case of

288

<u>Commonwealth of the Northern Mariano Islands v. Mariano F. Mendiola</u>, Cr. Case No. 88-43.

## BACKGROUND

Real party in interest Mariano F. Mendiola (hereafter Mendiola) was convicted in the Commonwealth Trial Court (now Superior Court) on nine counts, and was sentenced on September 20, 1988. He timely appealed his conviction on September 29, 1988, to the Appellate Division of the District Court (hereafter Appellate Division). Oral arguments on his appeal were not heard until April 26 or 27, 1990, and a decision issued on April 30, 1990. The decision of the Appellate Division vacated Mendiola's conviction and remanded the case for a new trial. The mandate of the Appellate Division to the Superior Court issued on May 24, 1990.

Between the filing of the notice of appeal and the issuance of the decision, Public Law 6-25 was enacted. This statute, among other things, created this Court and transferred all pending appeals in the Appellate Division to this Court. Pending appeals is specifically defined in the statute as all those appeals where "the final controlling mandate of the appellate tribunal having jurisdiction of the appeal has not been received by the Commonwealth Trial Court." 1 CMC § 3109(c). This statute became effective May 2, 1989. Mendiola, in compliance with this Court's

289

Order of March 14, 1990, filed a notice of appeal to this Court.[1]

The Superior Court has initiated proceedings in compliance with the Appellate Division's mandate.

## ISSUES PRESENTED

The basic underlying issue in this original action is whether this Court has jurisdiction over this matter. If the answer to this question is in the affirmative, then we address the issue of whether a writ should issue.

## DISCUSSION

There is no need to have a prolonged discussion on this jurisdictional issue. We have clearly stated in previous decisions that we have exclusive jurisdiction over appeals that were pending, as defined in Public Law 6-25, in the Appellate Division as of May 2, 1989. <u>Commonwealth of the Northern Mariana Islands v. Bordallo</u>, No. 90-003, Slip Op. (NMI June 8, 1990); <u>Vaughn v. Bank of Guam</u>, No. 89-004, Decision and Order (NMI June 6, 1990); <u>Wabol v. Villacrusis</u>, No. 89-005, Decision and Order (NMI December 11, 1989). We reaffirm our decisions in those cases. We are not convinced that we should overrule, or distinguish, those cases.

We are mindful that our decision in this matter may be looked upon as being in direct opposition to the jurisdictional decision of the Appellate Division in this same case. This petition may be

---

[1]Mendiola filed such notice of appeal under protest. For purposes of this petition, we need not address what effect, if any, an appeal under protest has.

seen as a collateral attack of the decision of the Appellate Division.

To be sure, our decision in this matter is in direct opposition to the jurisdictional decision of the Appellate Division. However, we cannot shirk our duty to enforce our laws, validly promulgated, in deference to another court.

We do not see, however, that this is a collateral attack on the decision of the Appellate Division. We say this on two grounds. Firstly, the concept of a collateral attack on a judgment presumes the existence of a sister court. In this case, the Appellate Division is not a sister court. It was our predecessor appellate court up to May 2, 1989. On May 2, 1989, jurisdiction over all local cases, both pending and future, were transferred to this Court. By law, the jurisdiction of the Appellate Division previously granted by the NMI over local cases ceased to exist on May 2, 1989. We are entitled, and indeed duty-bound, to affirm, modify, or reverse decisions of a predecessor court just as we are so obligated and entitled with regard to our own decisions.

Secondly, even if the Appellate Division were a sister court, the law is clear that a collateral attack on a judgment of a sister court is permissible in certain situations. One of those situations is where the court lacked jurisdiction in the matter. As stated in 11 C. Wright and A. Miller, Federal Practice and Procedure, § 2862, at 198-200 (1973),

A judgment is not void merely because

it is erroneous. It is void only <u>if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law</u>.

(Emphasis added.) As stated above, Public Law 6-25 made it crystal clear that the jurisdiction of the Appellate Division over local matters ceased to exist, even as to pending appeals, on May 2, 1989.

The Appellate Division's nature and existence are very similar to the Appellate Division of the District Court of Guam. <u>Compare</u>, 48 U.S.C. § 1424-3 (Guam) with 48 U.S.C. § 1694(b) (NMI). The Ninth Circuit, since 1987 in <u>Aguon v. Calvo</u>, 829 F.2d 845, stated that

> The District Court of Guam serves in two distinct capacities. It can act as a federal District Court. The District Court of Guam sitting as the Appellate Division also functions as a local territorial appellate court, the jurisdiction of which is determined exclusively by the Guam legislature.

829 F.2d at 847. This case was followed in <u>People of Guam v. Quezada</u>, No. 89-10259, slip op. (9th Cir. May 30, 1990). Both cases cite to the federal law establishing the Appellate Division of the District Court of Guam. The federal statutes dealing with the District Court of Guam and the District Court for the Northern Mariana Islands were simultaneously amended in 1984. In the provision dealing with Guam, there is a subsection (d) which states that if Guam establishes an appellate court, such establishment

shall not affect any appeal pending in the Appellate Division of the District Court of Guam. There is no such subsection in the provision dealing with the NMI. We find this omission to be significant.

The U.S. Congress could not insert a similar provision for the NMI because it was bound by the terms of the Covenant that the NMI will provide the District Court with whatever appellate jurisdiction it was to have, and that at any time, and from time to time, eliminate its appellate jurisdiction. Covenant § 402.

We appreciate the quandary faced by the Superior Court. Because there has been no previous guidance with regard to mandates from the Appellate Division in a pending appeal, we understand its difficulty in deciding what to do. Since it appears on its face that the mandate of the Appellate Division is a mandate of the judgment of a valid and competent court, the lower court had no choice but to comply. However, now that we have given guidance to the lower court, this dilemma should no longer arise.

We also appreciate Mendiola's argument on manifest injustice. However, we cannot disregard a clear expression of the wishes of the people of the Commonwealth through their legislative body. The statute is clear on what happens to pending appeals on May 2, 1989. To adhere to Mendiola's argument would have the effect of this Court either disregarding the clear mandate of the statute, or having to first strike down such provision. No argument was made

by Mendiola to strike down such provision.[2]   To expedite the handling of the regular appeal, we suggest to Mendiola and the NMI that they forthwith file copies of their briefs filed in the Appellate Division, along with copies of the excerpts of record. As soon as the copies have been submitted, this Court will make every reasonable effort to expedite the appeal process.

Because we have answered the first issue in the affirmative, we now address the issue of whether the writ should issue.   The answer to this issue is to be determined by applying the guidelines that we have adopted in Tenorio v. Superior Court, Orig. Action No. 89-002, Slip Op., at 6 and 7, (NMI November 14, 1989).[3]

In Tenorio, the guidelines are stated as follows:

1.   The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief desired;

---

[2]At oral arguments, Mendiola argued that there was no need to strike down such a provision since his argument on manifest injustice allowed this Court to avoid striking it down.  We fail to see how we can accomplish what she seeks unless we were to strike such provision for one reason or another.  The argument of manifest injustice may be applied only when a statute does not explicitly state that it is to be applied retroactively.  Public Law 6-25 is explicit in its application to pending appeals.

[3]We are disturbed that neither the petitioner nor the real party in interest addressed the compliance or the failure to comply with such guidelines.  We acknowledge that the decisions of this Court have not been published yet.  However, we would think that attorneys practicing on our islands would be aware of all our decisions since we are such a small community and since the Tenorio case and the later Mafnas v. Hefner, Orig. Action No. 89-001, Decision and Order, (NMI November 28, 1989) and Mafnas v. Superior Court, Orig. Action No. 90-001, Order (NMI January 31, 1990) cases were well publicized in our local papers.  Counsel are advised to cite this Court's opinions and decisions on matters that have been ruled upon by this Court.

2.  The petitioner will be damaged or prejudiced in a way not correctable on appeal;
3.  The lower court's order is clearly erroneous as a matter of law;
4.  The lower court's order is an oft-repeated error, or manifests a persistent disregard of applicable rules; and
5.  The lower court's order raises new and important problems, or issues of law of first impression.

1.  <u>No other adequate means</u>.  In spite of the fact that a notice of appeal has been filed in this case to this Court, the lower court continues to assert jurisdiction in this case.  It has held a competency hearing and has scheduled a hearing on the voluntariness of Mendiola's statements.  Clearly, there is no other adequate means to attain the relief requested.

2.  <u>Damage or prejudice not correctable on appeal</u>.  As noted above, an appeal has been filed to this court.  However, if we were to deny this petition on the ground that it is already before this Court on a regular appeal, the NMI will be damaged in that all pretrial motions and a new trial may be accomplished before we were to act on the merits of the appeal.  All of the time and expense associated with the lower court's attempt to comply with the Appellate Division's mandate will be lost and incapable of being regained.  This factor is met.

3.  <u>Order is clearly erroneous</u>.  Although the record before this Court shows that the NMI objected to any proceedings in the lower court, the record does not show whether the lower court issued an order regarding such objection.  The fact remains, however, that the lower court has disregarded such objection since

295

it has scheduled a hearing on the voluntariness of Mendiola's statements. As we decided in the beginning of this discussion, the lower court's assertion of continuing jurisdiction when an appeal has been filed to this Court, and when the law is clear that the Appellate Division's jurisdiction in this matter ceased on May 2, 1989, is clearly erroneous.

4. _Order is an oft-repeated error_. This factor is not met since this is the first case involving a mandate of the Appellate Division in a pending appeal.

5. _Order raises new and important issue_. This factor is met. While our jurisdiction in pending appeals is an important issue; going to the very substance of self-government, it is not a new issue. The issue of what the Superior Court is to do when it receives a mandate from the Appellate Division on a pending appeal is a new and important issue.

As stated in the _Tenorio_ case, the above factors are to be cumulatively considered, and a "proper disposition will often require a balancing of conflicting indicators." _Tenorio v. Superior Court_, _supra_, at 7. In doing so, we find that the writ of prohibition should issue.

### CONCLUSION

A writ of prohibition shall issue directing the Superior Court to conduct no further proceedings in an attempt to comply with the May 24, 1990 mandate of the Appellate Division. Further proceedings in the appeal of the criminal case shall be conducted

pursuant to this Court's Rules of Appellate Procedure.[4]

Jose S. Dela Cruz
Chief Justice

Jesus C. Borja
Associate Justice

---

[4]Special Judge Larry L. Hillblom concurs and will issue a separate opinion.

HILLBLOM, Special Judge, Concurring:

I concur in the decision and reasoning of the majority. However, I believe that the writ of prohibition should issue for an additional reason: the reservation of "self-government" to the people of the Northern Mariana Islands (NMI) provided in Covenant[1] Section 103[2] is at stake.[3]

The NMI legislature passed the Commonwealth Judicial Reorganization Act of 1989, P. L. 6-25, which, among other things, provided for a Commonwealth Supreme Court to hear all appeals from the Commonwealth Trial Court (renamed the Superior Court in the Act) and _specifically_ and _clearly_ _mandated_ that all "pending appeals" as defined be decided by this Court. If we _fail_ to issue a writ and _fail_ to hear this appeal, we would clearly be defying the wish of the people as expressed by the legislature. We would, in effect, deny the mandate of the ballot.[4]

---

[1] Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, _reprinted in_ Pub. L. No. 94-241, 90 Stat. 263 (1976).

[2] "The people of the Northern Mariana Islands will have the right of local self-government and will govern themselves with respect to internal affairs in accordance with a Constitution of their own adoption."

[3] The basis of this right and its definition are extensively examined in my concurring opinion in _Borja v. Goodman_, Appeal No. 89-010 (NMI June 26, 1990).

[4] The people of the NMI, through their elected legislators, clearly wanted a local appellate court chosen and confirmed by their representatives. Rightly or wrongly, they believed that the members of the judicial branch must directly experience the effects of their decisions. Living in the NMI and seeing the impact of their decisions is important. Congress placed similar importance in such concerns when it created a special court authorized to collaterally invalidate the judgments of other courts because of their lack of jurisdiction. _See_ _Consolidated Rail Corp. v. Illinois_, Sp.Ct.R.R.R.A. 1977, 423 F.Supp. 941, 948, _cert. denied_,

298

What would be our reason for ignoring P. L. 6-25? Has the legislature exceeded its authority under the NMI Constitution? Did P. L. 6-25 infringe upon a substantial federal interest?[5] There is no ground for either of these concerns, and they were not addressed in the parties' briefs or in oral argument.

Why, without any compelling federal interest, did the Appellate Division of the District Court strike at the heart of the Covenant's reservation of "self-government" to the people of the NMI? We simply do not know.

I believe that where, as in this case, the issue reduces itself to the naked exercise of authority[6] versus violation of the

---

429 U.S. 1095, 97 S.Ct. 1111, 51 L.Ed.2d 542 (1977). Where the authorized legislature (in that case, Congress, and in this case, the NMI legislature) decides that a court it creates should have exclusive jurisdiction over a matter within its legislative authority, the judgments of other courts should not be enforced under res judicata principles.

[5]See my concurring opinion in Borja v. Goodman, slip op. at 32.

[6]For the reasons stated in greater detail in my concurring opinion in Borja v. Goodman, slip op. at 25, I believe that in matters involving the interpretation of the Covenant, this Court is the final authority in all cases arising in the NMI courts. Congress cannot change or modify the authority of the Commowealth Supreme Court in any way that infinges on the right of self-government under Covenant Section 103 as defined in my concurring opinion in Borja, slip op. at 36. I also believe that the Appellate Division's decision was void because no judge from an NMI court participated in the panel, as required by Covenant Section 402. Assuming that it had jurisdiction, any mandate from the Appellate Division would have to issue to this Court, not the Superior Court. The Superior Court cannot be supervised or answerable to two courts.

fundamental right of self-government and the right to vote,[7] res judicata should not protect the exercise of such authority.

I therefore agree that the writ should issue.

_____
LARRY L. HILLBLOM, Special Judge

_____

[7]As noted in my concurring opinion in Borja v. Goodman, supra, slip op. at 26, unlike citizens of the several states, the people of the NMI do not vote for the officials who enact federal laws and appoint and confirm federal judges. The issue of lack of the right to vote never arises in the division of jurisdiction between the federal and state courts because both the national and state legislatures are elected by the people they govern.