**Ellen HAMEL, Plaintiff,**

v.

**PRUDENTIAL INSURANCE COMPANY, Defendant.**

**Civ. A. No. 85–4502–Y.**

United States District Court, D. Massachusetts.

June 30, 1986.

## MEMORANDUM AND ORDER

YOUNG, District Judge.

This suit arises out of the now-terminated employment relationship of the plaintiff Ellen Hamel ("Hamel") with the defendant Prudential Insurance Company ("Prudential"). In her complaint, Hamel alleges that she was sexually harassed during the course of her employment with Prudential and that, ultimately, she was fired in retaliation for complaining about this harassment. The complaint seeks relief under federal law for violations of The Equal Pay Act (Count II) and Title VII (Count III), and under state law for wrongful termination (Count IV) and intentional infliction of emotional distress (Count V). At oral argument, the Court dismissed the state claims for the reasons given in *Flynn v. New England Telephone*, 615 F.Supp. 1205, 1209–11 (D.Mass.1985). Prudential's motion for summary judgment on the Title VII claim is presently before the Court. For the reasons discussed below that motion is allowed.

### I.

Hamel began work as a sales trainee with Prudential in June, 1983. She alleges that from June, 1983 through November, 1983 she was harassed on numerous occasions by Leonard Altieri, one of Prudential's sales managers. During November, 1983, Hamel began a disability leave from her employment. Hamel alleges that between November, 1983 and December, 1983 Altieri would come uninvited to her home in Canton, Massachusetts to deliver disability paychecks. While there he allegedly sexually harassed her.

On December 22, 1983, Hamel complained to Michael Costa, a Prudential district manager, about Altieri's conduct. During the spring, 1984, Hamel continued to complain to Prudential officials about her past working conditions. During this time Hamel also retained the services of an attorney to represent her in connection with her job difficulties.

On May 25, 1984, Prudential notified Hamel that her employment had been terminated effective May 11, 1984, because her disability benefits had expired. Hamel alleges that she was fired because she complained about Altieri's advances.

On December 13, 1984, Hamel filled out an "Intake Questionnaire" at the Boston office of the Equal Employment Opportunity Commission (the "federal agency"). Pursuant to the federal agency's procedures, a formal charge was drafted and typed based upon the information obtained through the Intake Questionnaire. According to the affidavit of Charles Looney, the Area Director of the federal agency, a formal charge was prepared on January 23, 1985, but due to "administrative error" the charge was not sent to Hamel until March 22, 1985. Hamel filed the formal verified charge on March 28, 1985.

### II.

Anticipating the Supreme Court's decision in *Meritor Savings Bank, FSB v. Vinson, et al.*, —— U.S. ——, 106 S.Ct. 2399, 90 L.Ed.2d —— (1986), that the conduct of which complaint is here made constitutes a violation of Title VII, Prudential limits its motion for summary judgment to its contention that the filing of the charge was untimely. Prudential points out that March 28, 1985, was well over a year after

the last act of claimed sexual harassment, and 321 days after the claimed retaliatory discharge. Hamel responds that she should not be penalized for administrative error, and therefore this Court should deem the charge filed on the date she filled out the Intake Questionnaire, December 13, 1984.[1]

■ As to Hamel's argument that the Intake Questionnaire constituted a "charge," little need be said. First, § 706(b) of Title VII specifically requires that a charge be made "under oath or affirmation." 42 U.S.C. § 2000e–5(b). Although an Intake Questionnaire is signed, it is not signed under oath. Any suggestion that this distinction is formalistic tends to ignore the significance of a perjury conviction. Hamel relies heavily on *Casavantes v. California State University, Sacramento*, 732 F.2d 1441 (9th Cir.1984), for the proposition that an Intake Questionnaire can constitute a charge. *Id.* at 1443. With all due respect, this Court agrees with Judge Shadur's observation that *Casavantes* is "unpersuasive," and "another hard case making bad law." *Proffit v. Keycom Electronic Publishing*, 625 F.Supp. 400, 403 (N.D.Ill.1985). Accordingly, the Court rules that Hamel did not file a charge within the meaning of the statute when she completed the Intake Questionnaire. *Cf. id.* at 405.

■ Hamel next argues that even if the Intake Questionnaire was not a charge, she should not be penalized for the administrative error and delay in preparing the charge. Presumably, she means to argue that the Court should toll the filing period as of the day the administrative error began, January 23, 1985. In support of this argument Hamel points to *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982), in which the Supreme Court held that "filing a timely charge of discrimination with the EEOC

is not a jurisdictional prerequisite to suit in federal court, but a requirement that like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Id.* at 393, 102 S.Ct. at 1132. The above language does not support the result Hamel advocates here, however. This is not a case that requires equitable intervention. Hamel has been represented by counsel since before her termination. There appears no reason in the record why she and her counsel took seven months even to complete an Intake Questionnaire. Conceeding for the purposes of this motion that the federal agency committed some administrative error in delaying preparation of the charge, this did not relieve Hamel's counsel of the ultimate responsibility of monitoring his client's claim. That is precisely what a lawyer is paid to do. It is the job of the lawyer, not the agency, to keep the client's claim from going stale. In circumstances such as this, equity does not require tolling the limitations period. That said, it should be recognized that the result might well be very different were Ms. Hamel an unrepresented layperson, unfamiliar with the procedural complexity of the statute. Civil rights laws need not be interpreted so as to make them traps for the unwary. On the other hand, neither need the laws be interpreted so as to protect those who ought know better from their own indolence.

■ Although the above discussion in itself provides sufficient reason to grant Prudential summary judgment as to Count III, there is another flaw in Hamel's case. Even if the Court were to accept Hamel's argument that December 13, 1984 was the date upon which she filed her charge, her claim would still be barred unless she could show that it fell within one of the exceptions to the general rule of 180 days within which to file with the federal agency. 42

---

1. At oral argument, counsel for Hamel conceded that the claims for sexual harassment and retaliatory discharge should be treated as separate claims. Thus, even if Hamel's argument that December 13th was the filing date is accepted, that date was at least 348 days after the last alleged act of sexual harassment (sometime in December, 1983). Accordingly, that portion of the claim which alleges sexual harassment is untimely even under the standards Hamel recommends.

U.S.C. § 2000e–5(e). On this record, such a showing has not been made.

As just noted, Title VII generally requires that a charge be filed with the federal agency within 180 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e–5(e). However, the statute creates an exception to this requirement in so-called "deferral states," such as Massachusetts, where there exists a parallel state administrative scheme. As to cases arising within a deferral state the statute provides:

> In a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a state or local agency ... such charge shall be filed ... within three hundred days.

*Id.* (emphasis added). The Supreme Court has made clear that the requirement to initiate state proceedings is satisfied if the federal agency forwards the charge to the local agency, instead of the claimant herself. *Mohasco Corp. v. Silver,* 447 U.S. 807, 816, 100 S.Ct. 2486, 2492, 65 L.Ed.2d 532 (1980); *Love v. Pullman,* 404 U.S. 522, 525, 92 S.Ct. 616, 618, 30 L.Ed.2d 679 (1972). *But see Dixon v. Westinghouse Elec. Corp.,* 787 F.2d 943, 945–946 (4th Cir.1986), where the Fourth Circuit holds that, in a deferral state, mere transmittal to the state agency by the federal agency is insufficient to trigger the longer statute of limitations. None of these cases, however, support the conclusion that a claimant in a deferral state has an additional 120 days to file a claim with the federal agency without ever initiating a cognate state claim, causing one to be initiated, or notifying the state of the claim in any way.

Viewing the record in the light most favorable to Hamel, it appears that, at the very earliest, the federal agency sent notice of the charge to the Massachusetts Commission Against Discrimination (the "state agency") on October 25, 1985. This was 535 days after the challenged discharge. Patently, any filing with the federal agency could not be considered timely made if the statute means what it says; that filing with the state agency is a pre-

condition to claiming the benefit of the extended time period. *Cf. Mohasco Corp. v. Silver, supra,* 447 U.S. at 817, 100 S.Ct. at 2492 (claim initially submitted to EEOC is not "filed" with that agency until after charge first sent to state agency).

▮ Hamel argues that the worksharing agreement between the state and federal agencies obviates the need for a filing with the state. Under that agreement the state agency will "suspend its processing" of any charge initially filed with the federal agency. Although Area Director Looney testified in his affidavit that the federal agency's normal procedure is to send a copy of the charge on to the state agency "for cross filing and deferral purposes," there is no evidence in this case that any such notice was sent within the 300 day period following the challenged termination. Hence, the question here is whether the state's prospective waiver of its right initially to process claims affords a claimant 300 days to file with the federal agency, even when the state is not informed of the charge until after the 300 day limitations period has expired. Although the question is a close one, the Court rules (as an alternative ground to the conclusion advanced above) that to allow the worksharing agreement to achieve such a result would be inconsistent with the scheme Congress established.

In *Isaac v. Harvard University,* 769 F.2d 817 (1st Cir.1985) our Court of Appeals held that where the state agency referred a case back to the federal agency, the state proceedings were "terminated" within the meaning of § 706(c), even though the state's processing of the case was not complete. *Id.* at 823–24. *Isaac* stands for the proposition that a state has wide latitude in waiving its initial right to process a charge. But *Isaac* does not mean that a state can go so far as to waive its right to process a charge of which it is not even aware. At that point the state begins to trespass on ground that Congress already has covered. In effect, the agencies' waiver agreement does what Congress specifically did not do; i.e. allow 300 days

for filing charges in a deferral state regardless of whether the state procedures are invoked. The extended time period in deferral states evinces a Congressional concern that a claimant not forfeit her federal rights while participating in state proceedings. *Mohasco v. Silver, supra,* 447 U.S. at 821, 100 S.Ct. at 2494. Where the state is wholly unaware of the case, however, that concern is not implicated. The unambiguous language of the statute directs that the 300 day limitations period is applicable only when state proceedings have been instituted. Congress specified that, in a deferral state, filing with the state is a precondition to invoking the federal apparatus. 42 U.S.C. 2000e–5(c). The choice is not one for the claimant, or the state. Perhaps recognizing this necessity, the agencies provided in the worksharing agreement that the federal agency will forward a copy of each charge on to the state agency. That procedure, however, was not timely followed in this case. Accordingly, Hamel was not entitled to 300 days to file her charge with the federal agency because the state agency was not notified of the charge within 300 days of the allegedly unlawful practice.

This ruling may seem to some as resting on a "procedural technicality." [2] But that characterization of the holding does not affect the Court's analysis. Procedural technicalities hardly are foreign to the statutory scheme of Title VII. In giving life to the language of the statute, it is not for this Court to concern itself with the wisdom of Congressional choice. Questions of "technicality" go to enactment, not interpretation.

In accordance with all that has just been said, Prudential's motion for summary judgment as to Count III is allowed.

---

2. After all, the holding in this case does not so much alter the applicable time period as it requires the transmittal of a piece of paper from one agency to another. Once the state is informed of the charge, the worksharing agreement would constitute the state's termination of its processing, and would allow a claimant immediately to file with the federal agency. 42

U.S.C. § 2000e–5(c). Thus, the charge could be considered filed as soon as the state agency received the charge. *Cf. Thompson v. International Ass'n of Machinists,* 580 F.Supp. 662 (D.D. C.1984) (worksharing agreement constituted "termination" of proceedings within meaning of § 706[c] ).