**Bernard A. ROTH**

v.

**RHODE ISLAND HOSPITAL TRUST NATIONAL BANK and Bank of Boston.**

Civ. A. No. 91–0013 P.

United States District Court, D. Rhode Island.

March 29, 1994.

A. Lauriston Parks, Hanson, Curran, Parks & Whitman, Providence, RI, for plaintiff.

William P. Robinson, III, Edwards & Angell, Providence, RI, for defendants.

### MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

This is an action brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* (1988). Jurisdiction is based upon 28 U.S.C. § 1337 (1988). Plaintiff was employed by Rhode Island Hospital Trust National Bank, a sub-

sidiary of the Bank of Boston, until January 19, 1989. Plaintiff claims that defendants terminated his employment based upon his age, in violation of ADEA, and has brought suit under that statute. Defendants claim that plaintiff's termination was not age related, but was rather part of a broad, economically driven reduction in force, labeled "Teamwork 90" by the bank.

Defendants Rhode Island Hospital Trust National Bank and Bank of Boston have moved for summary judgment in this case. Defendants make the following assertions in support of their motion: (1) plaintiff failed to comply with the statutorily mandated timing requirements for the filing of charges of age discrimination under ADEA; (2) this court lacks jurisdiction over defendant Bank of Boston; (3) there are uncontested material facts which indicate that plaintiff was terminated due to a broad, economically driven reduction-in-force as well as plaintiff's documented poor performance, and was not terminated due to his age; and (4) the breach of contract claim is flawed both because of a preemptive federal statute and because, even accepting plaintiff's own version as to what was said, no legal contract was formed.

*1. ADEA Timing Requirements*

The parties are in agreement that Rhode Island is a "deferral state" for purposes of this motion. In order to bring an age discrimination action in a federal court located in a deferral state, the plaintiff is required under 29 U.S.C. § 626(d) to have filed a charge with the Equal Employment Opportunity Commission ("EEOC") within 300 days after the alleged unlawful practice occurred. *Mohasco Corp. v. Silver,* 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980); *Ciccone v. Textron, Inc.,* 651 F.2d 1 (1st Cir.1981), *cert. denied,* 452 U.S. 917, 101 S.Ct. 3052, 69 L.Ed.2d 420 (1981). At issue in this case is whether such a charge was filed within the required time period.

The parties agree that plaintiff sent the EEOC a letter which described the alleged age discrimination. This letter is dated October 26, 1989, and according to plaintiff's brief it was mailed on October 30 and was received by the EEOC in early November of 1989. All of these dates are within 300 days of January 19, 1989, the date on which plaintiff asserts he was first informed of the job elimination. Thus, if this letter is sufficient to constitute an EEOC charge under ADEA, then plaintiff has complied with the timing requirements for the filing of EEOC charges, and jurisdiction over the ADEA aspects of this case properly lies with this court.

■ I now turn to the definition of "charge." Defendants assert that because plaintiff's letter to the EEOC was not sworn to and notarized, it is insufficient to constitute a charge. However, plaintiff responds correctly that the requirement that charges be sworn and notarized applies only to charges brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–5(b) (1988) ("Title VII"), not charges brought under ADEA. ADEA itself uses the term "charge" without any effort at definition. 29 U.S.C. § 626(d). Under ADEA's procedural regulations, a "charge shall be in writing and shall name the prospective respondent and shall generally allege the discriminatory act(s). Charges received in person or by telephone shall be reduced to writing." 29 CFR § 1626.6 (1992). These provisions contain no language requiring oaths or notarization. In contrast, Title VII requires that "[c]harges shall be in writing *under oath or affirmation*" 42 U.S.C. § 2000e–5(b) (emphasis added) and Title VII's procedural regulations specify that "[a] charge shall be in writing and signed *and shall be verified.*" 29 CFR § 1601.9 (1992) (emphasis added).

Defendants' reliance on *Hamel v. Prudential Ins. Co.,* 640 F.Supp. 103 (D.Mass.1986), a Title VII case, fails to take into account the difference between a charge under Title VII and a charge under ADEA. The text of plaintiff's October 26 letter ("I am hereby filing charges of age discrimination against my former employer, Rhode Island Hospital Trust Bank [and its parent, Bank of Boston]") indicates his intent to file charges of age discrimination against defendants. The letter complies with the requirements of ADEA in that it was in writing, it was signed, and it "generally alleged the discriminatory acts." 29 CFR § 1626. The fact that the letter was not sworn or notarized is

meaningless because ADEA does not require that it be sworn or notarized in order to constitute a charge.

■ Defendants offer a second argument in support of their contention that the October 26, 1989 letter to the EEOC does not constitute a proper charge. Defendants rely upon the deposition testimony of Charles Looney, Area Director for the EEOC in Boston, as well as the documents produced at Mr. Looney's deposition, as evidence that the EEOC did not consider plaintiff's October 26 letter to be a charge of age discrimination.[1] This evidence indicates that the EEOC regarded the October 26 letter as an "initial inquiry" rather than a charge. (*Defs.' Reply Mem. Supp. Mot. Summ. J.* at 3–5). Defendants argue that because the EEOC did not consider the October 26 letter to be a charge and did not act accordingly, plaintiff is therefore barred from maintaining the instant ADEA action in federal court. However, the EEOC's failure to treat a document which complies with EEOC regulations as a proper charge does not prevent a plaintiff from maintaining an ADEA action in federal court. To decide otherwise would be to penalize a plaintiff for the EEOC's deviations from its own guidelines.[2] I therefore hold that plaintiff's October 26 letter to the EEOC consti-

tutes a proper charge of age discrimination under the requirements of ADEA.[3]

■ Defendants make one more assertion with regard to the timing requirements for the filing of charges of age discrimination under ADEA. In a brief footnote to their *Memorandum in Support of Defendants' Motion for Summary Judgment,* defendants appear to move for dismissal based upon the assertion that plaintiff has not produced any evidence that he ever filed a proper charge with the appropriate state agency. (*Mem. Supp. Defs.' Mot. Summ. J.* at 6, n. 5). However, in his affidavit filed in support of Plaintiff's Objection to Defendants' Motion for Summary Judgment, Attorney Parks states that, on October 30, 1989, he sent a charge letter containing plaintiff's allegations of age discrimination to the Rhode Island Commission for Human Rights. He further states that, according to the Return Receipt received from the United States Postal Service, the Rhode Island Commission for Human Rights received the mailing on October 31, 1989, 285 days following plaintiff's termination. (Parks Aff. ¶ 6.)

At issue is whether, under ADEA, the form and nature of the documents filed by plaintiff with the Rhode Island Commission

1. Mr. Looney's inability to verify receipt of the October 26 letter is irrelevant given the affidavit of Attorney Parks, in which he states that, in early November of 1989, he received a Return Receipt from the United States Postal Service indicating completed delivery of the charge letter to the EEOC. (Parks Aff. ¶ 7.)

2. In an analogous case, a plaintiff completed an EEOC Intake Questionnaire for an ADEA claim within the statutory period for the filing of a charge. The court held that the Intake Questionnaire constituted a charge because it was "submitted under circumstances that would lead the EEOC to believe that the complaining party sought to 'activate the Act's machinery.'" *Steffen v. Meridian Life Ins. Co.,* 859 F.2d 534, 542 (7th Cir.1988). The court went on to say that

> it would be a needless triumph of form over substance to hold that his completed Intake Questionnaire did not satisfy the ADEA's charge-filing requirement.... [T]he Intake Questionnaire clearly gave the EEOC more than reasonable notice that, by filing the Intake Questionnaire, Steffen intended to 'activate the Act's machinery.' The problem in this case is that the EEOC informed Steffen that it would

> be treating the Intake Questionnaire as a charge but then failed to treat it as a charge. *The EEOC's failure to act on a charge, however, does not bar a person from maintaining an ADEA action.*
> *Id.* at 543, 544 (emphasis added).

3. See *Greanias v. Sears, Roebuck and Co.,* 697 F.Supp. 1025, 1028 (N.D.Ill.1988) ("ADEA's statutory 'charge' provision is critically different from that of Title VII.... ADEA is conspicuously silent as to the formal requirements of a 'charge'—it simply uses that term without any attempt at definition and without requiring and oath or affirmation."); *Rabzak v. County of Berks,* 815 F.2d 17, 20 (3rd Cir.1987) ("The defendant strongly urges that the ... letter is not a statutorily sufficient charge of discrimination. In considering this question, we must bear in mind that the charge-filing provisions are to be liberally construed.... That principle rests upon the premise that an anti-discrimination statute, such as the Act here involved, is humanitarian legislation which should be liberally interpreted to effectuate the congressional purpose of ending discrimination and that congress envisioned that charges would mostly be filed by laymen unassisted by lawyers.").

for Human Rights were such as to preclude plaintiff from maintaining an ADEA action in federal court. ADEA provides the following guidance with regard to the federal-state relationship:

> In the case of an alleged unlawful practice occurring in a State which has a law prohibiting discrimination in employment because of age and establishing or authorizing a State authority to grant or seek relief from such discriminatory practice, no suit may be brought under section 626 of this title before the expiration of sixty days after proceedings have been earlier commenced under the State law.... If any requirement for the commencement of such proceedings is imposed by a State authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State authority.

29 U.S.C. § 633(b). This statutory language is interpreted by the controlling case of *Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 99 S.Ct. 2066, 60 L.Ed.2d 609 (1979), in which an involuntarily retired employee brought federal suit under ADEA after failing to file a state complaint within the state statute of limitations. *Oscar Mayer* held that in deferral states, plaintiffs *must* commence a proceeding with the appropriate state agency sixty days before bringing a federal suit under ADEA; however, a grievant is not required to commence state proceedings within the time limits specified by state law. *Id.* at 759, 99 S.Ct. at 2073. The Court explains that Section 633(b) of ADEA

> "is intended only to give state agencies a limited opportunity to settle the grievances of ADEA claimants in a voluntary and localized manner so that the grievants thereafter have no need or desire for independent federal relief.... The structure of the ADEA reinforces the conclusion that *state procedural defaults cannot foreclose federal relief* and that state limitations periods cannot govern the efficacy of the federal remedy."

*Id.* at 761, 762, 99 S.Ct. at 2074, 2075 (emphasis added).

The language of *Oscar Mayer,* that "state procedural defaults cannot foreclose federal relief," is dispositive in the instant case. Although the procedural default in *Oscar Mayer* was a failure to file within the period of the state statute of limitations whereas the procedural default here is a failure to notarize the charge letter, this difference is irrelevant. Both a state statute of limitations and a state requirement that a charge letter be notarized are "requirement[s] for the commencement of such proceedings ... other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is based." 29 U.S.C. § 633(b). In light of the clear language of ADEA and the interpretation of this language in *Oscar Mayer,* the failure of the plaintiff to notarize the charge he sent to the Rhode Island Commission for Human Rights does not constitute an independent ground for the dismissal of his complaint. This Court maintains proper jurisdiction over the ADEA aspects of this case, and defendants' motion for summary judgment on this ground is DENIED.

### 2. Jurisdiction over Bank of Boston

■ Defendants argue that because the second, notarized charge that plaintiff filed with the EEOC does not make reference to the Bank of Boston as a defendant, therefore under 29 U.S.C. § 626(d) this Court lacks jurisdiction over the Bank of Boston. However, this Court accepts the October 26, 1989 letter to the EEOC as a proper charge under ADEA. In this letter, plaintiff explicitly charges both Rhode Island Hospital Trust Bank and Bank of Boston as defendants. Having named the Bank of Boston as a defendant at the administrative level, plaintiff can properly sue the Bank of Boston in federal court under 29 U.S.C. § 626(d). Defendants' motion to dismiss Count I of the Complaint to the extent that it relates to the Bank of Boston is DENIED.

### 3. Disputes Over Material Facts

■ This Court summarily rejects defendants' assertion that there are no issues of

material fact in dispute with regard to plaintiff's termination of employment. Issues of material fact which are in dispute include but are not limited to the following: whether the job performance evaluations according to which defendants claim plaintiff was discharged were in fact objective or whether they were biased against him due to his age; whether plaintiff was actually discharged based upon the performance evaluations or whether he was discharged based upon his age; and whether or not the "Teamwork–90" reduction in workforce was implemented in a way that failed to take into account objective measures of plaintiff's job performance. Defendants' motion to dismiss on these grounds is therefore DENIED.

### 4. The Breach of Contract Claim

Plaintiff does not oppose defendants' motion for summary judgment with respect to the breach of contract claim. This Court GRANTS defendants' motion for summary judgment with regard to the breach of contract claim only.

SO ORDERED.