**Joseph SEERY, Plaintiff,**

v.

**BIOGEN, INC., Defendant.**

**No. CIV.A.2000–12232–RBC** [1].

United States District Court, D. Massachusetts.

April 4, 2002.

---

1. This case has been referred to the undersigned for all purposes pursuant to 28 U.S.C. § 636(c). (Notice of Case Assignment # 20).

Samuel L. Rodriguez, Jamaica Plain, MA, for plaintiff.

Kenneth M. Bello, Steven D. Weatherhead, Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, P.C., Boston, MA, for defendant.

## *MEMORANDUM AND FIRST ORDER ON DEFENDANT BIOGEN, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS (# 17)*

COLLINGS, United States Magistrate Judge.

### *I. Introduction*

On October 27, 2000, plaintiff Joseph Seery ("Seery" or the "plaintiff") commenced this action by filing a three-count complaint (# 1) against defendant Biogen, Inc. ("Biogen" or the "defendant"). Seery subsequently amended the complaint, with leave from the Court to do so, on March 30, 2001(# 4). The amended complaint contains counts against Biogen for retaliation (Count I), disability discrimination (Count II) and wrongful termination (Count III). On April 30, 2001, Biogen submitted a motion (with supporting memorandum) to dismiss plaintiff's first amended complaint and jury demand in its entirety, or, in the alternative, to strike certain allegations and dismiss Counts II and III (## 7, 8). On May 25, 2001, Seery opposed Biogen's motion to dismiss (# 12), and on June 10, 2001, Judge Wolf, the District Judge to whom this case was originally assigned, denied Biogen's motion to dismiss "without prejudice to ad-

dressing these issues on a possible motion for summary judgment at the conclusion of discovery."

On June 14, 2001, Biogen filed a motion for leave to file a reply memorandum in further support of its motion to dismiss (# 13), and on July 23, 2001, Judge Wolf granted that motion. On August 10, 2001, Biogen answered the complaint (# 15), and then on September 7, 2001, Biogen filed a motion for judgment on the pleadings (# 17) and a supporting memorandum (# 18). On September 14, 2001, Judge Wolf reassigned the case for all purposes to the undersigned (## 19, 20). On October 4, 2001, Seery filed a memorandum in opposition to Biogen's motion for judgment on the pleadings (# 23). On October 16, 2001, Biogen, with leave from the Court, filed a reply memorandum in further support of its motion for judgment on the pleadings (# 25).

On October 17, 2001, this Court held a hearing on Biogen's motion for judgment on the pleadings. At the hearing, the Court granted the parties 45 days in which to conduct limited discovery on certain discrete issues pertaining to Biogen's motion for judgment on the pleadings. The Court also indicated that it would treat Biogen's motion for judgment on the pleadings as a motion for summary judgment. The Court then held a further hearing on December 17, 2001. Just a few days prior to the hearing, on December 14, 2001, Biog-

en, with leave from the Court, filed a supplemental memorandum of law in further support of its motions for summary judgment and judgment on the pleadings (# 31). On December 17, 2001, Seery filed a supplemental memorandum and opposition to Biogen's attempt to expand purpose of hearing (# 28), with a supporting affidavit (# 29).[2] At the December 17 hearing, the Court took Biogen's motion for judgment on the pleadings under advisement.[3] The within Memorandum and First Order, Etc. deals only with the question of whether Seery had 300 days within which to file his claim in federal court.

## II. The Facts [4]

In 1991, Biogen hired Seery as an associate scientist. (Amended Complaint # 4, ¶ 5). At the time Biogen hired Seery, he had disclosed to Biogen that he had Crohn's disease.[5] (Id. at ¶ 6). In 1993, Seery had a resurgence of Crohn's disease. (Id. at ¶ 7). Up until the time of the resurgence, Biogen had regularly granted Seery salary increases of four percent. (Id.). From 1993 to 1997, Biogen's evaluations of Seery were very good. (Id. at ¶ 8). After the flare up of his disease, Biogen reduced Seery's salary increases to less than two percent. (Id. at ¶ 9). In 1997, Biogen praised Seery's work in an annual review but gave him no raise. (Id. at ¶¶ 10, 11).

---

**2.** In response to Seery's request, the Court granted him until January 11, 2002 to submit additional materials that respond to Biogen's arguments, other than its statute of limitations argument.

**3.** The Court treats this as a motion for summary judgment because it is necessary to look beyond the pleadings in order to issue a decision. Thus, throughout this Memorandum and Opinion reference is made to the pleadings as well as to other documents.

**4.** The facts provided here are given mainly for background purposes. Because I am treating Biogen's motion as one for summary judgment, I must ensure that there are no disputed material facts (Fed.R.Civ.P. 56). However, because I am ultimately deciding Biogen's motion on an issue of law, I may at times recite facts that are disputed by the parties. The disputed facts (if any) have no bearing on this partial decision on Biogen's motion.

**5.** Crohn's disease is a gastrointestinal disorder. (# 4, ¶ 17).

In the winter of 1998, Seery requested, pursuant to the terms of the Biogen employment manual, a human resources investigation into why Biogen paid him lower salary increases than other employees who had achieved less in their employment reviews. (# 4 at ¶ 13). As a result of Seery's complaint and the exercise of his rights under the employment manual, Biogen reclassified Seery in the span of three months from an employee with outstanding accomplishments to a problem employee. (Id. at ¶ 14).

In the Spring of 1998, Seery's doctor notified Biogen and requested that Biogen place Seery on short-term disability. (Id. at ¶ 17). On May 28, 1998, Dr. Mark Detweiler, M.D. sent a letter to Biogen setting forth Seery's medical condition and describing in detail the impact that Seery's disease had on a "major life activity." (Id. at ¶ 18). In the summer of 1998, Seery left work at Biogen because of the resurgence of the Crohn's disease. (Id. at ¶ 16). Biogen classified Seery as on leave under the Family Medical Leave Act ("FMLA"). (Id. at ¶ 19). Under the FMLA, Seery had until August 31, 1998 to return to work or he ran the risk of being replaced. (Id.). Biogen simultaneously placed Seery on short-term disability. (Id.).

After several conversations with Seery and letters back and forth, the Senior Human Resources Consultant at Biogen, Lois Schiappa ("Schiappa"), wrote Seery a letter in July, 1998 notifying him that she was construing comments he had made to mean that he was resigning from Biogen. (# 4 at ¶¶ 20–23). Schiappa attached to her letter a separation agreement that inter alia conditioned severance pay and benefits contingent on the employee's signature to the separation agreement. (Id. at ¶ 23). Immediately, Seery contacted his supervisor, Joseph Davies ("Davies"), to complain about Biogen's attempt to termi-

nate him. (Id. at ¶ 25). Davies assured Seery that this was an error and Seery should come back to work, and advised Seery that if his health did not improve, he could apply for long-term disability. (Id. at ¶ 26).

On August 31, 1998, Dr. Detweiler released Seery to return to work at Biogen but requested in writing specific accommodations (i.e., minimization of stress and fatigue and not working "excessively long") on Seery's behalf. (Id. at ¶ 27). Despite Dr. Detweiler's requests, Biogen took no steps to accommodate Seery, but instead singled Seery out and intentionally took steps to increase Seery's stress, knowing that it would result in an increase of his symptoms and absences. (Id. at ¶ 28).

When Seery returned to work in September, 1998, Biogen held weekly critiques of Seery's work. (# 4 at ¶ 29). No other worker was subject to such weekly critiques. (Id.). These weekly meetings took place from September, 1998 to January, 1999.(Id.). As Biogen continued to criticize him, Seery asked Mr. Pepinsky ("Pepinsky"), one of his supervisors, why Biogen had singled him out. (Id. at ¶ 32). Pepinsky replied that Biogen had singled him out because Seery had made an internal complaint about disability discrimination. (Id.).

Prior to Seery's complaint of disability discrimination, Biogen had never critiqued Seery on a weekly basis. (Id. at ¶ 33). In or about January, 1999, Seery wrote an internal memorandum to Davies and Pepinsky complaining of the way Biogen had singled him out and continued to retaliate against him. (Id. at ¶ 34). On March 8, 1999, without notice to Seery, Biogen terminated Seery. (Id. at ¶ 35). Moreover, Biogen refused to offer Seery long-term disability. (Id. at ¶ 36). Also, when Biogen terminated Seery, it denied him the

benefit of his stock that was to vest on April 21, 1999. (Id. at ¶ 37).

On December 7, 1999, 274 days after he was terminated by Biogen, Seery filed a charge with the Equal Employment Opportunity Commission ("EEOC"), asserting that Biogen violated several provisions of the Americans with Disabilities Act. (# 4 at ¶ 38). On July 31, 2000, the EEOC issued Seery a right to sue letter. (Id. at ¶ 39).

### III. Analysis

Biogen sets forth four main arguments as to why it is entitled to judgment on the pleadings (or summary judgment). First, Biogen argues that Counts I and II of the amended complaint, alleging retaliation and disability discrimination under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., are barred by a 180 day statute of limitations. Even if the sometimes applicable 300 day statute of limitations applies, however, Biogen asserts that Seery's disability discrimination claim (Count II) still would be time-barred because there was no "continuing violation." (# 18, p. 1). Next, Biogen argues that Seery has failed to establish a prima facie case of disability discrimination because he has set out no facts which would support his contention that Biogen impermissibly failed to provide him with a reasonable accommodation. (Id. at pp. 1–2). Finally, Biogen argues that Seery's common law claim of wrongful termination fails because his claim that his termination caused him to forfeit his vested stock options is wrong on its face. (Id. at p. 2).

Seery, on the other hand, asserts that Biogen is not entitled to judgment on the pleadings because he was entitled to file his claim within 300 days (rather than 180 days) after the last event giving rise to Seery's discrimination claim. (See generally # 23). Seery argues further that his disability discrimination claim is not time-barred because the discrimination was a "continuing violation." (# 23, pp. 7–8). For the reasons discussed below, I find that Counts I and II are entitled to the extended 300 day statute of limitations and thus were timely filed. Therefore, at this juncture, I will deny Biogen's motion for judgment on the pleadings (or motion for summary judgment) as to Counts I and II to the extent that the motion is based on the contention that Seery had only 180 days to file these claims.[6]

An analysis of Seery's claims and Biogen's motion vis-à-vis Counts I and II must begin with a close look at the statute of limitations applicable to the ADA. Title 42 U.S.C. § 2000e–5(e)(1) sets out, in relevant part, that:

> A charge under this section [7] shall be filed [with the EEOC] within one hundred and eighty days after the alleged unlawful employment practice occurred...except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice..., such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred,

---

**6.** This Memorandum and Opinion addresses only the statute of limitations issue relevant to Counts I and II of the Amended Complaint. Biogen's remaining arguments as to why it is entitled to judgment on the pleadings or summary judgment will be addressed in a subsequent Memorandum and Order.

**7.** This section applies also to cases filed under Title VII of the Civil Rights Act of 1964 ("Title VII"). Thus, throughout this Memorandum and Opinion, I will cite to Title VII cases as well as to ADA cases.

or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier....

(emphasis added).

Moreover, 42 U.S.C. § 2000e–5(c)

...provides that where an alleged discriminatory practice has occurred in a so-called 'deferral state' (a state that has its own anti-discrimination laws and enforcement agency), the deferral state has sixty days of exclusive jurisdiction over the claim, and only after the sixty days have expired or the proceedings have been 'earlier terminated' can the charge be filed with the EEOC.

EEOC v. Green, 76 F.3d 19, 20–21 (1st Cir.1996).

■ "The sixty-day period of exclusive jurisdiction is intended to 'give States and localities an opportunity to combat discrimination free from premature federal intervention.'" Id. at 21 (quoting EEOC v. Commercial Office Prods., 486 U.S. 107, 110, 108 S.Ct. 1666, 100 L.Ed.2d 96 (1988)).

The Green Court explained that:

Many state agencies, in order to facilitate the federal processing of charges, have entered into "worksharing agreements" with the EEOC in which the state agency agrees to waive its right to the sixty-day period of exclusive jurisdiction for certain categories of claims.

Massachusetts is a deferral state and the Massachusetts Commission Against Discrimination ("MCAD") is the agency responsible for enforcing Massachusetts's anti-discrimination laws. The EEOC and the MCAD have entered into a Worksharing Agreement to avoid du-

plication of effort by apportioning the responsibilities for processing charges.

Green, 76 F.3d at 21.

Thus, it is clear that either the 180 day statute of limitations period or the 300 day period must apply to Seery's claims. Seery filed his claim with the EEOC on December 7, 1999, 274 days after the last alleged discriminatory act by Biogen (i.e., the termination) occurred. (# 4, ¶ 38). Therefore, if the 180 day period applies, his claims under the ADA (Counts I and II) would be time-barred, but if the 300 day period applies, his claims would be considered timely filed. In order to figure out which limitations period applies, I must determine whether Seery "initially instituted proceedings" with the MCAD, and I must review the worksharing agreement in place between the MCAD and the EEOC on December 7, 1999 (the date Seery filed his charge with the EEOC).

It is undisputed that Seery did not himself initially institute proceedings with the MCAD before he filed his charge with the EEOC. (# 23, p. 7, n. 3).[8] This does not, however, end the inquiry. If the EEOC referred Seery's charge to the MCAD, Seery would likely be entitled to the 300 day extended period. "The EEOC's referral of a charge initially filed with the EEOC to the appropriate state or local agency properly institutes the agency's proceedings...and the EEOC may hold the charge 'in suspended animation' during the agency's 60–day period of exclusive jurisdiction." Commercial Office Prods., supra, 486 U.S. at 111, 108 S.Ct. 1666 (citing Love v. Pullman Co., 404 U.S. 522, 525–26, 92 S.Ct. 616, 30 L.Ed.2d 679 (1972)). "In light of the 60–day deferral

---

8. Seery's counsel conceded this point at the hearing on October 17, 2001. It is also undisputed that Seery did not check the box on the EEOC charge form indicating that he wanted his charge filed with the EEOC and the applicable state agency. (See # 8, Ex. A). This fact will be relevant for the discussion, infra.

period, a complainant must file a charge with the...state agency, or have the EEOC refer the charge to that agency, within 240 days of the alleged discriminatory act in order to ensure that it may be filed with the EEOC within the 300–day limit." *Commercial Office Prods.*, supra, 486 U.S. at 111, 108 S.Ct. 1666.

In the case at bar, it appears that the EEOC did not refer Seery's charge to the MCAD or if it did so refer the charge, the MCAD never received it. In support of its motion, Biogen submitted an affidavit from the Administrator of Public Records of the Boston office of the MCAD attesting to the fact that the MCAD has "no reference whatsoever to a charge of discrimination ever being filed with the MCAD against Biogen, Inc. by either... Seery or by the EEOC on Mr. Seery's behalf." (# 18, Ex. A, ¶ 4). Moreover, even if the EEOC did refer Seery's charge to the MCAD on the day it was filed, it could not have gotten to the MCAD by day 240 because Seery did not file the charge with the EEOC until day 274.[9] Again, however, this does not end the inquiry.

I must now look to the worksharing agreement in place between the EEOC and the MCAD on December 7, 1999.[10] The worksharing agreement contains several provisions which are relevant for the instant analysis. It provides that:

9. This fact is important because a charge must be filed or referred to the state agency by day 240 in order to allow the state agency its sixty day exclusivity period and still have the charge considered filed with the EEOC by day 300. *Commercial Office Prods.*, supra, 486 U.S. at 111, 108 S.Ct. 1666.

10. Biogen argues that in fact there was no worksharing agreement in place at that time because the previous worksharing agreement expired on September 30, 1999 and was not renewed until March 3, 2000. Biogen maintains that even though the EEOC and the

• "[a]s charges are received by one Agency against a Respondent on the other Agency's litigation list a copy of the new charge will be sent to the other Agency's litigation unit within 5 working days." (# 31, Ex. D, III(A)(2)(C));

• the "EEOC and the [MCAD] each designate the other as its agent for the purpose of receiving and drafting charges, including those that are not jurisdictional with the agency that initially receives the charges. EEOC's receipt of charges on the [MCAD's] behalf will automatically initiate the proceedings of both the EEOC and the [MCAD]." (Id. at II(A));

• "[c]harges that are received by the [MCAD] whether in person or by mail and jurisdictional with the EEOC and timely filed by the Charging Party...will automatically be filed with the EEOC. The date of receipt will be the date of filing." (Id. at II(C));

• "[f]or charges originally received by the EEOC and/or to be initially processed by the EEOC, the [MCAD] waives its right of exclusive jurisdiction to initially process such charges for a period of 60 days for the purpose of allowing the EEOC to proceed immediately with the processing of such charges before the 61st day." (Id. at III(A)(1)).

MCAD attempted to make the worksharing agreement retroactive to October 1, 1999, no written modification was ever executed and thus there was actually no effective worksharing agreement on December 7, 1999. (# 31, pp. 11–13). However, from all that appears (see # 31, Ex. E(1)), the worksharing agreement in place on December 7, 1999 was the one that was made retroactive by the EEOC and the MCAD on March 3, 2000 (attached as Ex. D to # 31). Thus, I refer to that worksharing agreement throughout the remainder of this Memorandum and Order.

Thus, from the above, it is clear that the worksharing agreement contains a so-called waiver provision (III(A)(1)) wherein the MCAD waives its exclusivity period so that the EEOC may process a charge immediately, without having to wait sixty days.

I must now decide whether the facts in the instant case-that Seery did not himself initiate proceedings with the MCAD before filing his charge with the EEOC, that Seery did not check the box on the EEOC form stating that he wanted his charge filed with the state agency, that the MCAD never received a copy of Seery's charge, that the relevant worksharing agreement contains a provision designating the EEOC and the MCAD as each other's agents for the purpose of receiving charges and an "automatic initiation clause" (II(A))[11], and that the worksharing agreement contains a waiver provision-compel a conclusion that the 180 day limitations period applies or that the 300 day period applies.

Case law in this area is not consistent, and the First Circuit has never addressed the precise issue. In Green, one of the only First Circuit cases to address a similar issue, the Appeals Court vacated the district court's grant of summary judgment and remanded the case for further proceedings. The issue in that case was whether plaintiff should be entitled to the extended 300 day statute of limitations on her Title VII claims. The district court, in granting summary judgment, held that "because the MCAD never received a copy of [plaintiff's] charge, a precondition to invoking the 300–day extended limitations period had not been satisfied; thus, the general 180–day limitations period applied

and the...complaint was time-barred." *Green*, 76 F.3d at 22.

The First Circuit held that the district court had erred by considering an affidavit from the defendant attesting to the fact that the MCAD had no record of receiving plaintiff's charge and by not considering an affidavit submitted by the EEOC reflecting that the MCAD had in fact received the plaintiff's charge. The First Circuit summed up the issue by stating that "[w]hether [plaintiff's] charge enjoys the extended limitations period and is thereby timely filed depends on whether the MCAD received a copy of [plaintiff's] charge." *Id.* at 23–24 (emphasis added). Notably, the First Circuit purposely did not "decide whether anything less than the MCAD's receipt, such as the EEOC's mere forwarding [of the claim], initiates MCAD proceedings." *Id.* at 24. See also *Fite v. Digital Equip. Corp.*, 232 F.3d 3, 6 (1st Cir.2000) (citing to the Green case for the proposition that "the extent to which filing of the complaint with the EEOC should, under a worksharing agreement between the agencies, be deemed to constitute a filing with the [MCAD] is an issue on which this court specifically reserved judgment.")

Thus, it would appear initially from the holding in Green that the fact that the MCAD in the case at bar never received a copy of Seery's charge would mean that the 180 day limitations period would have to apply. However, the First Circuit in Green clearly noted that the worksharing agreement was ambiguous as to whether a filing with the EEOC was to be deemed a filing with the MCAD. *Green*, supra, 76 F.3d at 23, n. 6.[12] Importantly, the works-

---

11. To recap, clause II(A) of the worksharing agreement sets out, in relevant part, that the "EEOC's receipt of charges on the [MCAD's]

behalf will automatically initiate the proceedings of both the EEOC and the [MCAD]."

12. The First Circuit has since noted in dicta that a "charge filed with the EEOC in a

haring agreement at issue in Green was not the same worksharing agreement that was applicable to events in the instant case.[13]

I turn now to cases from other jurisdictions for guidance as to whether the 180 day period or the 300 day period should apply. There is at least one case that is factually nearly identical to this case. In *Bolinsky v. Carter Machinery Co., Inc.*, 69 F.Supp.2d 842 (W.D.Va.1999), the only discrimination charge filed by the plaintiff was the one he filed with the EEOC, and the plaintiff did not specifically request that the state agency consider his charge. That is, he did not check the box on the bottom of the EEOC form.[14] *Bolinsky*, 69 F.Supp.2d at 844, 847. The EEOC apparently did not refer the plaintiff's charge to the state agency. The worksharing agreement in *Bolinsky* contained provisions identical to those in the case at bar-a clause providing that the "EEOC's receipt of charges on the [state agency's] behalf will automatically initiate the proceedings of both EEOC and the [state agency]" and one providing that the state agency "waives its right of exclusive jurisdiction to initially process such charges for a period of 60 days for the purpose of allowing the

EEOC to proceed immediately with the processing of such charges before the 61st day." *Id.* at 845–46.

The *Bolinsky* Court first looked to the Commercial Office Products case in which the Supreme Court held that "a state's affirmative waiver of exclusive jurisdiction in a specific case will constitute a termination of state proceedings." *Id.* at 846. Then, the *Bolinsky* Court followed the reasoning of "numerous circuit courts" to determine that a waiver contained in a worksharing agreement is self-executing. *Bolinsky*, 69 F.Supp.2d at 846.[15] Next, the *Bolinsky* Court turned to cases in the Third, Fifth, Seventh, Eighth, Ninth and Eleventh Circuits holding, in effect, that " 'a workshare agreement can alone effect both initiation and termination of the state proceedings and that, as a result, plaintiffs may file with the EEOC without first filing with the [state agency].' " *Id.* (quoting *Hong v. Children's Memorial Hospital*, 936 F.2d 967, 971 (7th Cir.1991), *cert. denied*, 511 U.S. 1005, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994)). The Court in Bolinsky ultimately held that "the plaintiff's filing with the EEOC automatically commenced and terminated the state proceedings on his charge . . . ." 69 F.Supp.2d at 847. The

---

jurisdiction having a designated [state] agency, as Massachusetts does, is automatically referred to that state agency. . . . Therefore, claims filed with the MCAD or the EEOC are effectively filed with both agencies." *Davis v. Lucent Technologies, Inc.*, 251 F.3d 227, 230 n. 1 (1st Cir.2001).

**13.** Apparently, the EEOC and MCAD followed the First Circuit's advice that they "would be wise to revise the language of their Worksharing Agreement to clarify their intent" to explicitly provide that the EEOC's receipt of charges on the MCAD's behalf initiates proceedings. *Green*, supra, 76 F.3d at 23, n. 6. As previously stated, section II(A) of the 1999 Worksharing Agreement does explicitly provide that the "EEOC's receipt of charges on the [MCAD's] behalf will automatically initi-

ate the proceedings of both the EEOC and the [MCAD]. . . ."

**14.** In Bolinsky, the issue was framed as one of exhaustion of state remedies, rather than a statute of limitations issue, but the issue is really the same as the one present in the instant case.

**15.** See, e.g., *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172, 1175 (9th Cir.1999) ("Precedent in this circuit, as well as in every other circuit that has considered the issue, has found waivers in these [worksharing] agreements to be self-executing, meaning that a charge filed with the state agency before the 300-day filing deadline expires is deemed automatically filed with the EEOC on that same day.").

Court also dismissed as irrelevant the fact that the plaintiff did not check the box on the bottom of the EEOC charge form because the charge form "is a standard form in use across the country" and because the worksharing agreement contained "no requirement that a claimant check the box." *Id.*

In short, the Bolinsky Court held that by virtue of the worksharing agreement, a filing with the EEOC is deemed to be a filing with the state agency because of the provision stating that the "EEOC's receipt of charges on the [state agency's] behalf will automatically initiate the proceedings of both EEOC and the [state agency]" and that termination of the state agency's proceedings happens simultaneously with filing because of the waiver provision. That is, in a case where the worksharing agreement contains an "automatic initiation" provision (like II(A) in the instant agreement) and a waiver provision (like III(A)(1) in the instant agreement), a plaintiff himself need not file with the state agency before filing with the EEOC. Such a filing is accomplished by virtue of the worksharing agreement.

In Seery's case, this means that when he filed his charge with the EEOC, the charge "automatically initiated" proceedings at both the EEOC and the MCAD.[16] Thus, in order to take advantage of the 300 day period, Seery was not obligated to file with the MCAD before filing with the EEOC because by virtue of the worksharing agreement, the charge filed with the EEOC initiated proceedings at the MCAD. Moreover, because of the waiver provision in the worksharing agreement, the EEOC

was not obligated to wait sixty days before acting on Seery's charge. The worksharing agreement simultaneously instituted and terminated proceedings at the MCAD on Seery's behalf.

There are numerous cases that are in accord with the reasoning just stated. See, e.g., *Reed v. Hewlett–Packard Co.*, No. Civ. A. 98–582, 2001 WL 65725, at *5 (D.Del., Jan. 12, 2001) (denying defendant's motion to dismiss plaintiff's Title VII on the grounds that plaintiff was entitled to 300 day period because a waiver in a worksharing agreement constituted a termination of state proceedings); *Fowler v. District of Columbia*, 122 F.Supp.2d 37, 43 (D.D.C.2000) (denying defendant's motion to dismiss plaintiff's Title VII claim because "the filing of a charge with the EEOC simultaneously commences proceedings with the state agency"); *Puryear v. County of Roanoke*, 214 F.3d 514, 519 (4th Cir.2000) (affirming district court's denial of defendant's motion to dismiss plaintiff's Title VII claim because by virtue of worksharing agreement that contained "automatic initiation" provision and waiver provision, plaintiff properly commenced state proceedings when she filed charge with EEOC only)[17]; *Griffin v. City of Dallas*, 26 F.3d 610, 613 (5th Cir.1994) (waiver in worksharing agreement "instantaneously transformed the EEOC's receipt of [plaintiff's] charge into a filing of that charge and authorized the EEOC to initiate proceedings on that charge immediately"); *Worthington v. Union Pacific R.R.*, 948 F.2d 477, 482 (8th Cir.1991) (waiver in worksharing agreement automatically commences and terminates state proceed-

---

**16.** Interestingly, 42 U.S.C. § 2000e–5(e)(1) does not say that a charge need be filed with the state agency before it is filed with the EEOC, just that "proceedings" must be "initially instituted" with the state agency in order to take advantage of the 300 day period.

**17.** The *Puryear* Court dismissed the defendant's argument that "commencing" an action requires an affirmative action on the part of the plaintiff as "contrary to the weight of authority." *Puryear*, 214 F.3d at 519.

ings upon plaintiff's filing charge with the EEOC); *Sofferin v. American Airlines, Inc.*, 923 F.2d 552, 558 (7th Cir.1991) [18]; *Trevino–Barton v. Pittsburgh Nat'l Bank*, 919 F.2d 874, 879 (3rd Cir.1990) (same); *Green v. Los Angeles County Superintendent of Schools*, 883 F.2d 1472, 1479–80 (9th Cir.1989) (same); *Griffin v. Air Prods. & Chems., Inc.*, 883 F.2d 940, 943 (11th Cir.1989) (same).

Despite much authority to the contrary, Biogen relies heavily on *Hamel v. Prudential Ins. Co.*, 640 F.Supp. 103 (D.Mass. 1986) to support its argument that where the MCAD never received a plaintiff's charge (as in the instant case), the applicable limitations period is 180 days, regardless of the terms of any worksharing agreement. (# 31, pp. 5–7). In Hamel, Judge Young held that the plaintiff was not entitled to the 300 day extended period when the MCAD did not receive any notice of the plaintiff's charge until day 535, stating that "any filing with the federal agency could not be considered timely made if the statute means what it says: that filing with the state agency is a precondition to claiming the benefit of the extended time period." *Hamel*, 640 F.Supp. at 106. Judge Young reasoned further that a state should not be allowed to "waive its right to process a charge of which it is not even aware." *Id.* That is, the MCAD should have had the chance to decide whether to waive its right to process a charge after it had actually had a chance to review that charge.

Hamel is not dispositive in the instant case however. There is an important distinction between Hamel and the case at bar. In *Hamel*, the Court was confronted with a very different worksharing agreement than the one in effect in 1999. The worksharing agreement in Hamel contained a provision stating that the MCAD would "suspend its processing" of any charge initially filed with the EEOC. *Id.* at 106. It appears, however, that the worksharing agreement in that case did not contain a waiver provision or an "automatic initiation" provision. (Indeed, as is plain from the Green case, the worksharing agreement in place in the 1993–95 time frame definitely did not contain an "automatic initiation" provision.). As discussed at length above, a worksharing agreement that does contain such provisions, like the one applicable to the instant case, allows the plaintiff the benefit of the 300 day period even if he himself does not ever file with the state agency. The worksharing agreement, in essence, accomplishes the filing on his behalf. Thus, Hamel does provide guidance because the worksharing agreement was different in material respects from the one which is applicable to this case.

Biogen's attempts to rely on three other District Court cases are equally as unavailing as its reliance on the Green case. First, in *Meyer v. Bell Atlantic Network Svcs., Inc.*, 57 F.Supp.2d 303 (E.D.Va. 1999), the Court granted defendant's motion for summary judgment on plaintiff's ADA and Title VII claims on the grounds that plaintiff was not entitled to the 300 day extended period. Despite Biogen's insistence that there was a worksharing agreement in Meyer that allowed for dual-filing, there actually was no discussion at all in Meyer of any worksharing agreement.[19] The Meyer Court did not accept

---

**18.** The *Sofferin* Court noted that in order for a charge to be deemed to have been filed with the state agency, no actual communication need take place between the EEOC and the state agency because "they had already communicated pursuant to the wsa [or worksharing agreement]." *Sofferin*, 923 F.2d at 558 (emphasis in original).

**19.** That is not to say that there was no applicable worksharing agreement, just that the

plaintiff's argument that since she lived in a deferral state, it was not her fault that the EEOC did not refer her charge to the state agency and thus held that because no charge was ever filed with the state agency, plaintiff was entitled only to the 180 day filing period, not the 300 day period. *Meyer*, 57 F.Supp.2d at 307. The Meyer case is not helpful to resolving the issue presented on the facts of the instant case. There is no way to know if there was any worksharing agreement between the EEOC and the state agency in Meyer or what that agreement said if there was such an agreement. The worksharing agreement (if there was one) might have provided that a filing with the EEOC is deemed to be a filing with the state agency. Such is the situation in the instant case-Seery's charge with the EEOC was deemed by the worksharing agreement to be an automatic initiation of proceedings at the MCAD.

The Court in *Gorman v. Hughes Danbury Optical Systems*, 908 F.Supp. 107 (D.Conn.1995), the next case relied on by Biogen, held similarly to the Court in Meyer—that because there was no evidence that state proceedings were ever commenced, plaintiff was not entitled to the 300 day period on her ADA and Title VII claims. *Id.* at 112. Again, there was no discussion by the Court of any worksharing agreement between the EEOC and the state agency. If any worksharing agreement did exist, it might have provided the evidence that the Court was looking for, to wit, that state proceedings were commenced by virtue of an "automatic initiation" provision in the worksharing agreement. Indeed, the Gorman Court

dismissed the plaintiff's case without prejudice to allow her time to provide evidence that the state agency was notified of plaintiff's claims. In the instant case, the worksharing agreement commenced the MCAD proceedings on behalf of Seery, and thus he is entitled to the 300 day filing period. His filing with the EEOC on day 274 was therefore timely.

In the last case relied on by Biogen, *Jackson v. Savin Corp.*, Civ. A. No. 86–2126, 1987 WL 17007, at *2 (D.N.J., May 29, 1987), the Court granted defendant's motion to dismiss, holding that where the state agency had no notice of plaintiff's Title VII claim on day 300, the 300 day period could not apply and thus plaintiff's filing on day 297 was untimely. The EEOC's referral of the charge on day 309 was too late to allow plaintiff to take advantage of the 300 day period; that is, the EEOC would have to have sent the charge by day 300 in order to give plaintiff the benefit of the 300 day period. *Id.* at *2. Although the Jackson Court noted that there was an existing worksharing agreement, it did not consider the agreement in reaching its decision. Again, the worksharing agreement might have provided for automatic initiation of state proceedings upon receipt of the charge by the EEOC, in which the case the charge would have been timely filed on day 297 (assuming the worksharing agreement also contained a waiver provision).[20]

In sum, none of the cases relied on by Biogen can supplant the reasoning of numerous circuit and district courts that a worksharing agreement containing an "au-

Court did not consider it in reaching its decision.

**20.** Indeed, if the worksharing agreement in Jackson did not contain a waiver provision, the charge would actually have to have been sent by the EEOC to the state agency by day

240 (not day 300 as the Court maintains) in order to allow the state agency its sixty day exclusivity period. Thus, in any event, the holding in Jackson really does not make sense without having the benefit of the worksharing agreement.

tomatic initiation" provision and a waiver provision simultaneously initiates and terminates state agency proceedings such that a plaintiff himself need not file with a state agency prior to filing with the EEOC in order to take advantage of the 300 day filing period.[21] In the case at bar, Seery did not have to file with the MCAD before filing his charge with the EEOC. By virtue of the worksharing agreement in place in 1999 between the EEOC and the MCAD, Seery's filing with the EEOC on day 274 simultaneously initiated and terminated proceedings at the MCAD on Seery's behalf. Thus, because there were, in essence, proceedings instituted at the MCAD by virtue of the worksharing agreement, Seery is entitled to the longer 300 day statute of limitations and his charge must be considered to have been timely filed.

### V. Conclusion

For the reasons stated, it is ORDERED that the Defendant Biogen's Motion for Judgment on the Pleadings (# 17) as to Counts I and II be, and the same hereby is, DENIED to the extent that it seeks judgment on the ground that the 300 day statute of limitations was not applicable on the facts of the case.

---

**21.** It is interesting to note that the cases relied on by Biogen are for the most part cases decided earlier than the cases I have relied upon in this Memorandum and Order. It seems that worksharing agreements have evolved over the years such that they now most often contain "automatic initiation" provisions and waiver provisions. Such changes in the worksharing agreements seem to be helping the law in this area to be more clear-cut and consistent.